Wis.]                    JANUARY TERM, 1893.                    601

Ward vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

WARD, Respondent, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*May 27 — June 21, 1893.*

*Railroads: Accident at street crossing: Duty of traveler to look before crossing track: Negligence in making flying switch: Contributory negligence: Drunkenness: Instructions to jury: Evidence: Special verdict.*

| 85 | 601 |
|---|---|
| 87 | 285 |
| 85 | 601 |
| 90 | 221 |
| 85 | 601 |
| 94 | 133 |
| 85 | 601 |
| 109 | 71 |
| e109 | 72 |
| o109 | 73 |
| e109 | 74 |

1. It was not negligence for a traveler on a highway to drive across a railroad track immediately after the passage of a train for which he had waited, without looking in the direction from which it came and from which a single car was following it at a distance of 150 or 200 feet, moving by its own momentum, having been detached from the train for the purpose of making a flying switch.

2. The conductor of the train, who was on such car and saw the traveler approaching the crossing when the car was from fifty to seventy feet from it, and who hallooed to the traveler but, although he might have stopped the car with the brakes, did not do so because he thought he could get over the crossing before the traveler reached it, was guilty of gross negligence causing the injury to the traveler, whose wagon was struck by the car on the crossing.

3. It is immaterial whether the traveler was or was not drunk at the time, if his drunkenness in no way contributed to the accident.

4. In an action by the traveler for injuries so sustained it was not error to charge the jury that the making of the flying switch over the street crossing was a most dangerous proceeding, and that it was the duty of the defendant to take special pains to give the public full warning of the danger, and that it was the duty of the conductor to see persons approaching the crossing, unaware of the danger, and give them sufficient warning.

5. In such action evidence as to the distance within which such a car, with a sound brake, could be stopped, was admissible.

6. The refusal to give instructions asked is not error where those given cover every material question in the case.

7. The refusal to submit certain questions for a special verdict is not error where those submitted embrace all the material issues.

8. A witness may give his opinion as to the speed at which a train was moving, although he cannot tell how many feet or rods there are in a mile.

9. The order in which the testimony may be introduced is in the discretion of the trial court.

APPEAL from the Circuit Court for *Eau Claire* County. Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The facts are sufficiently stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

*S. L. Perrin* and *R. J. MacBride,* for the appellant.

*T. F. Frawley,* for the respondent, to the point that there was no error in charging the jury that the making of a running switch is a most dangerous proceeding and that it was the duty of the defendant to take special pains to give the public full warning of the danger, cited 1 Thomp. Neg. 452; Beach, Contrib. Neg. 223; *Brown v. N. Y. C. R. Co.* 32 N. Y. 597; *Sutton v. N. Y. C. & H. R. R. Co.* 66 id. 243; *Kay v. Penn. R. Co.* 65 Pa. St. 269; *Ill. Cent. R. Co. v. Baches,* 55 Ill. 379; *Chicago, R. I. & P. R. Co. v. Dignan,* 56 id. 487; *Chicago & A. R. Co. v. Garvy,* 58 id. 83; *Ill. Cent. R. Co. v. Hammer,* 72 id. 347; *Murphy v. C., R. I. & P. R. Co.* 38 Iowa, 539; *Murphy v. C., R. I. & P. R. Co.* 45 id. 661; *Alabama & V. R. Co. v. Summers,* 68 Miss. 566; *Fulmer v. Ill. Cent. R. Co.* id. 355; *French v. T. B. R. Co.* 116 Mass. 537; *O'Connor v. Mo. Pac. R. Co.* 94 Mo. 157; *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Ferguson v. Wis. Cent. R. Co.* 63 id. 147; *Howard v. St. P., M. & M. R. Co.* 32 Minn. 214; *Pennsylvania R. Co. v. State,* 61 Md. 108; *Brown v. N. Y. C. R. Co.* 32 N. Y. 600; *Ewen v. C. & N. W. R. Co.* 38 Wis. 616; *Johnson v. C. & N. W. R. Co.* 49 id. 529; *Townley v. C., M. & St. P. R. Co.* 53 id. 634; *Farley v. St. L., K. C. & N. R. Co.* 5 Mo. App. 435; *Cheney v. N. Y. C. & H. R. R. Co.* 16 Hun, 415.

ORTON, J.    The following are substantially the facts of this case, according to the testimony: The village of Fall Creek, in the county of Eau Claire, has about 500 inhabitants, and one main street running east and west, very much traveled.    The defendant's railway runs through the vil-

lage and across said street, southeast and northwest. There are three tracks crossing said street, one main track and two side tracks. It was down grade from a considerable distance southeast down to this crossing. There was a switch about 150 feet northwest of the crossing, and the depot is some distance beyond to the northwest. On the 6th day of January, 1891, about 4 o'clock P. M., the plaintiff, who was a farmer living several miles southeast of the village, and about thirty-two years of age and having a family, started with his team and empty double wagon from near the center of the village, where he had left his load, to go home by this street and over this crossing. When he came near the crossing he saw a locomotive and a freight train of eighteen or twenty cars approaching it, coming from the southeast, and he stopped his team about thirty-two feet from the center of the main track, and waited until said train passed by, and he then drove on, and when the team had crossed over the track a single detached freight car, following the train about 150 or 200 feet behind, running by the impetus given it by the speed of the train and by its own momentum, came upon the crossing without any warning or signal and unseen by the plaintiff, and struck his wagon in which he was riding and driving, and threw it off the track, and dashed the plaintiff to the ground headlong, and broke his skull in two places and permanently injured and disabled him. This car had been cut off from the train about 1,500 feet back to make what is called a "flying switch" upon a side track about 150 feet northwest of the crossing. John Roddy, the conductor of the freight train, was on and in charge of this car, and first saw the plaintiff approaching the crossing when his car was from fifty to seventy feet from it. According to his own testimony, he let the car run without using the brakes because he thought he could get over the crossing before the plaintiff reached it. He was standing

Ward vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

near the brake, on the forward end of the car, and the tes-
timony tended to show that he could have stopped it by
applying the brakes after he saw the plaintiff approaching
the crossing, in time to have avoided the collision. It was
his duty to have looked before he came so near to it, to see
if this crossing, so much used, was clear of teams and trav-
elers. Situated where he was, on the top of the car, so
high above the ground, he should have looked ahead con-
tinually to see if the track was clear. His car had no bell
or whistle or other means of signaling or warning, and his
constant vigilance and applying the brakes were his only
means of avoiding danger, and he failed to use either. He
said he hailed or hallooed to the plaintiff, and the brake-
man at the switch says that he did the same, but the plaint-
iff did not hear either of them. The human voice is weak
and of little use when compared and in competition with
the noise of cars and wagons, and a desperate "make-
shift" in such a dangerous emergency. The plaintiff did
not look in the direction of this car coming. He was
watching and waiting for the train to pass. His attention
was diverted from that direction, and as soon as the train
was over and away from the crossing he drove on, not
supposing or having any reason to expect or think that this
detached car was following after the train. No ordinarily
reasonable man would have so expected or thought, situ-
ated as the plaintiff was. The duty of a traveler before
crossing a railway to look both ways and listen depends
upon the conditions that he might reasonably expect the
coming of a train at any and all times, and that his atten-
tion is not reasonably arrested or diverted. Here both
of these conditions were absent.

It is claimed by the learned counsel of the appellant that
the plaintiff was intoxicated, notwithstanding the verdict
of the jury otherwise. In view of the facts, this question
does not seem to be material. It is only material as affect-

ing the question of the plaintiff's contributory negligence. If not the least want of common care and prudence can be imputed to him, then it is immaterial whether he was drunk or sober at the time. Railway companies have no more right to run over a drunken man than a sober one. Drunkenness is not negligence *per se*, nor unless it contributes to the accident or injury. If it did not, then it is a matter of no concern to the defendant. What more could or would have been reasonably done by the plaintiff, or by any one so situated, if unquestionably sober, than he did to protect himself from injury? If nothing, then it was no matter whether he was drunk or not. If the plaintiff did not do anything he ought not to have done, or omit to do anything that he ought to have done, under the circumstances, then its immateriality is apparent.

The jury found a special verdict that the defendant was negligent, in that its servant failed to stop the car, and that such negligence was the proximate cause of the injury; that the conductor in charge of the car did not use due diligence to warn the plaintiff of his danger, and could have stopped the car in time to have prevented the collision, by applying the brakes after he discovered the plaintiff approaching the track; that the plaintiff was not guilty of any want of ordinary care which contributed to the injury, and that he was not intoxicated immediately prior to the accident, or incapable of managing and conducting himself with ordinary care. The jury found the plaintiff's damages at $4,700, and the court rendered judgment accordingly. The errors assigned will be disposed of in their order.

1. The court ought to have granted a nonsuit, or directed a verdict for the defendant, or granted a new trial. On the merits of the case involved in these motions but little need be said. This is a very plain case. There is nothing in the conduct of the plaintiff that suggests even a suspicion of the want of ordinary care. The question of his being in-

toxicated is not, therefore, properly in the case. But the jury found that he was not intoxicated, and there was evidence to that effect. Under the circumstances he was not bound to look in the direction of the approaching car. In *Ferguson v. Wis. Cent. R. Co.* 63 Wis. 152, the plaintiff's attention was diverted in the same manner, and it was held that his not looking in the direction of the single car was excused. See, also, *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Duame v. C. & N. W. R. Co.* 72 Wis. 523; and *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 376; *Greany v. L. I. R. Co.* 101 N. Y. 419. The negligence of the defendant was clearly shown, and the negligence of the conductor was *gross*. He could have stopped the car within the fifty or seventy feet from the crossing after he saw the plaintiff, and did not even try to do so, but took the chances of getting over the crossing first or of killing or mangling the plaintiff. It was one of the most daring feats of recklessness ever attempted.

2. The court charged the jury to the effect that making this "flying switch" over a street crossing "was a most *dangerous* proceeding;" and "that it was the duty of the defendant to have taken *special* pains to give the public *full* warning of the danger;" and that it was the duty of the conductor to see persons approaching the crossing, unaware of the danger, and give them sufficient warning. Special exception is taken to the language, "a *most dangerous* proceeding," "*special* pains," and "*full* warning." If it was a "most dangerous proceeding," then it follows, of course, that "special pains" should be taken to give the public "*full* warning." The learned counsel of the appellant, in stating the principle of certain cases cited and claimed to be against the above instruction, uses the following language: "It is not negligent to push, back, or switch cars over a crossing, even though the cars be 'kicked,' or a 'flying switch' be made, *if precautions* to prevent injury to

travelers on the highway are taken *that are proportionate*
to the *special danger* of the mode adopted." This language
justifies the instruction. *Precautions* to prevent injury to
travelers *proportionate* to the *special* danger must be "*special* pains" to give *full* warning to the public, or it is not
proportionate to the "*special* danger;" and "*special* danger"
is not common or ordinary danger, but uncommon and extraordinary danger, or *very* dangerous, or "*most* dangerous."
The meaning is the same. In *Ferguson v. Wis. Cent. R. Co.*
63 Wis. 152, clearly analogous to this case, Mr. Justice
Lyon characterizes the act as "a most dangerous proceeding," and the precautions to be used must be "a high degree
of care," or "the *utmost* care;" and in *Butler v. M. & St.
P. R. Co.* 28 Wis. 487, it is held that a flagman at the crossing would not be an unreasonable precaution. In *Johnson
v. C. & N. W. R. Co.* 49 Wis. 529, the running of cars
across public streets is said to be attended with "great
peril" to human life, and the "*utmost* care" should be exercised to avoid injury. It may be said that in all such
cases the language of the courts has been as strong, and
often stronger, in characterizing such a dangerous proceeding and in requiring the utmost care on the part of the
company to prevent injury. The learned counsel contends
that such instructions invade the province of the jury. Has
the jury a right to find that this was not "a most dangerous proceeding," and that "special pains" need not be used
to prevent injury in such a case? If not, then it is not exclusively a jury question. It is the statement of an obvious fact, within the common knowledge of everybody. It
is the duty of courts to denounce such a dangerous proceeding as making "flying switches" over populous streets, and
to raise high the standard of care and precaution to be
used, in apt and forcible language. See, also, other cases
cited in respondent's brief.

3. The refusal of the court to give the instructions asked

by the defendant was not error. The instructions given embraced every material question in the case.

4. The questions submitted to the jury were also ample and sufficient to embrace all the material issues, and the refusal to submit those presented by the defendant's counsel was not error.

5. The court refused to strike out the testimony of the witness Shaun, in respect to the speed of the train. This witness was twenty years of age, and had lived with his father about thirty rods from the upper switch, in this village many years, and had seen a great many trains pass by, and he gave an opinion as to the speed of this train that it was about twenty-five miles per hour. On cross-examination he said he did not know how many feet or rods there were in a mile. It was objected that this showed him incompetent to testify on that question. It is a mere matter of opinion how many miles an hour a train is running, with the best of witnesses. It is not a matter of expert evidence or of science. *Detroit & M. R. Co. v. Van Steinburg*, 17 Mich. 104. The opinion of some witnesses would be more reliable than that of others. It would depend upon their intelligence and experience. It does not follow that a witness may not be able to form a reasonably intelligent opinion of the distance or space of a mile if he cannot readily know or tell how many feet or rods there are in a mile. He may be able to form an opinion of what is a foot in length, height, or depth, or of what is a rod or a mile. A knowledge of these main spaces is acquired by observation and practical test, while their minute subdivisions depend much upon the tables to be learned and remembered. The weight to be given to the opinion of any witness will depend upon his general intelligence, learning, and experience. But the opinion of one who ranks below the common standard is not to be stricken out as incompetent. The jury should be allowed to give it its proper

weight. It would be arbitrary to prohibit any witness of sound mind from giving his opinion of a matter that is within the common knowledge of mankind and does not depend upon the science or peculiar skill of experts.

6. The first question put to the witness Roedel, and objected to, was immaterial; and the question as to the distance in which such a car, with a sound brake, could be stopped was clearly competent, relevant, and material. The order in which the testimony may be introduced is in the discretion of the court. *Remlinger v. Young*, 22 Wis. 426.

There do not appear to have been any good reasons for the court to grant the motion for a new trial. The evidence seems to have fully warranted the verdict, and the damages awarded appear to be reasonable and proportionate to the plaintiff's injury.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon the question of negligence in respect to flying switches or detached cars moving by their own momentum, see note to *Kentucky C.*. *R. Co. v. Smith*, 18 L. R. A. 63.— Rep.