Argued December 22, 1937; affirmed January 18, 1938

## DIXON *v.* RAVEN DAIRY, INC., ET AL.
(75 P. (2d) 347)

188

*Hugh L. Biggs,* of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for appellant.

*Charles W. Erskine,* of Portland (Frederick Gronnert, of Portland, on the brief), for respondent.

LUSK, J. Plaintiff was struck and injured by a truck owned by the defendant, Raven Dairy, Inc., as it was being driven on Second avenue in the city of Portland, Oregon. Plaintiff recovered a judgment from which this appeal is taken.

The defendants assign as error the rulings of the circuit court denying their motions for a judgment of involuntary nonsuit and for a directed verdict in their favor. They contend that there is no evidence of actionable negligence which was the proximate cause of plaintiff's injury, and that the plaintiff was guilty of contributory negligence as a matter of law.

The complaint alleged that the accident was caused by the following negligent acts on the part of the driver of the truck, the defendant William Haglund, namely: (1) Failure to yield plaintiff the right of way, he being in the pedestrian lane of traffic; (2) excessive speed; (3) failure to give warning of the approach of the truck; (4) failure to keep a lookout so as to detect plaintiff's presence in the pedestrian lane of traffic; (5) failure to give warning of the defendant's intention to turn; and (6) failure to give a signal or warning of intention to make a right-hand turn at the intersection.

There is evidence of the following facts: Second avenue runs north and south and is intersected by Oak street, which runs east and west. On the morning of January 23, 1936, plaintiff, in company with his daughter, Doris Roper, and her husband, Paul Roper, was on his way to the police station which is located at the northwest corner of the intersection of the two streets. They had parked their automobile on the east side of Second avenue, a short distance south of Oak street, and from there walked north on the east side of Second avenue to the south side of Oak street where they turned to the left to cross Second avenue. As they faced west, plaintiff was on the right of the others, approximately three feet south of the curb line of Oak street. He looked to the left and saw defendant's truck approaching from the south at a distance of approximately 75 feet. It was on the right-hand side of Second avenue, far enough out in the street to clear automobiles parked at the east curb, and proceeding in a straight line at an estimated speed of 25 miles per hour. Mr. and Mrs. Roper stepped from the curb first and were followed by the plaintiff. The Ropers had taken not over two steps when they

saw the truck, which had not slackened its speed and had given no warning, by horn or otherwise, turn sharply to the right towards the three pedestrians. Mrs. Roper screamed, and she and her husband jumped back and avoided injury. The plaintiff had taken one step into the street—perhaps still had one foot on the curb—when he heard Mrs. Roper scream. He looked up, saw the truck, tried to evade it, but was struck by some portion of the right side of the vehicle to the rear of the driver's cab. At the time he was injured, the plaintiff was in the pedestrian's crossing, which is 12 feet wide, and the front of the truck had passed through the crossing, and a few feet beyond its northern boundary. The plaintiff did not see the truck from the time he observed it some 75 feet away, as he stood at the curb, until it appeared before his eyes immediately prior to his injury. The accident occurred on a clear day and the pavement was dry. Neither the driver of the truck, nor Mr. Herman P. Raven, president of the defendant company, who was riding with him in the cab, saw the plaintiff or his companions, nor did they know that an accident had occurred until some time afterwards. The truck continued on its course, east on Oak street, stopping at a shop near First street, where Mrs. Roper found Mr. Raven and informed him of her father's injury.

In any consideration of the sufficiency of this evidence the controlling fact—the fact which, as we think, distinguishes the case from many of the cases relied on by the defendants—is that the truck, traveling at the rate of 25 miles per hour, through a down-town street, without slackening its speed, and without giving warning, suddenly altered its course to make a right-hand turn and ran into the plaintiff as he was crossing the street.

 The argument of the defendants proceeds upon the assumption that the truck was already in the pedestrian's lane and had passed beyond its northern border before the plaintiff undertook the crossing, or gave any indication of an intention to cross; and that the plaintiff stepped into the side of the vehicle as it rounded the corner. On that basis they insist both, that the defendants' negligence was not the proximate cause of the accident, and that the plaintiff was guilty of contributory negligence. The facts so assumed, however, do not appear so clearly and unequivocally as to remove them from the field of controversy. It is nowhere shown in the record, except by inference, that the truck had already reached the pedestrian's lane before the plaintiff stepped from the curb. If it was traveling at a speed of 25 miles per hour, as the evidence indicates, it would pass through the pedestrian's lane in a fraction of a second, and it may well be, under the evidence, that the plaintiff was already undertaking the crossing at the time that the truck veered to the right. He testified that he had taken one step into the street when he heard his daughter scream. This occurred when she saw the truck turning sharply. It must have occurred when the vehicle was some little distance away, because Mrs. Roper and her husband were able to avoid injury. As they were farther from the curb than the plaintiff and south of him, and as the truck was approaching from the south, it was still farther distant from the plaintiff than from the Ropers when Mrs. Roper screamed. It would have been permissible, therefore, and not unreasonable for the jury to reject the defendants' view of the facts and to conclude that plaintiff did not step into the truck, but was struck by it after he had gained the street, as it passed him in its sharply veering course toward the corner.

Ordinarily, it is for the jury to determine what is the proximate cause of an accident: *Kukacka v. Rock*, 154 Or. 542, 544 (61 P. (2d) 297) ; *Martin v. Oregon Stages,* 129 Or. 435, 450 (277 P. 291) ; Anderson, An Automobile Accident Suit, 756, § 612. A pedestrian must exercise ordinary care for his own safety, but the question whether a pedestrian who is struck by an automobile at or near a regular street crossing has been guilty of contributory negligence, which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury: *Emmons v. Skaggs,* 138 Or. 70 (4 P. (2d) 1115) ; *Cline v. Bush,* 152 Or. 63 (52 P. (2d) 652) ; Anderson, *Id.,* 914, § 760, *et seq.*

We think that the facts of this case bring it within the general rule and that the question of proximate cause and contributory negligence were both for the determination of the jury.

Counsel for defendants invoke the rule stated in *Lord v. Stacy,* 68 Cal. App. 517 (229 P. 874), and other cases cited by them, that it is the duty of a person about to cross a city street, immediately before placing himself in a position of danger, to look in the direction from which danger is to be anticipated. We think that this doctrine does not aid the defendants because the evidence is that the plaintiff did look. The real question is whether he should have looked again as he took the first step into the street. That, in our opinion, is a question of fact as to which reasonable minds might draw different conclusions. Having ascertained the presence of the truck 75 feet south of him, and, apparently, intending to proceed straight through the intersection at a distance from the curb greater than the width of an automobile, he was justified in assuming that one step would not take him into a place of danger. At least, it was a question for the jury to determine

whether a reasonably prudent person would have so acted in the circumstances. This is all the more true because he was in the pedestrian's crosswalk, which, by reason of the statute giving him the right of way, was, in a sense, for him a zone of safety. He was entitled to the benefit of the rule laid down by Mr. Justice BELT in *Manning v. Helbock,* 135 Or. 262, 267 (295 P. 207), that if at the time he commenced the crossing there was no traffic approaching within such distance as to reasonably indicate danger, he had the right to proceed.

The circuit court did not err in denying defendants' motion for a judgment of involuntary nonsuit and for a directed verdict.

 Error is assigned because of the refusal of the court to withdraw from the jury the issues of excessive speed, failure to keep a lookout, and failure of the defendants to yield the right of way. What we have said, as to the sufficiency of the evidence makes it unnecessary to discuss these questions in detail. The jury, taking the view of the evidence most favorable to the plaintiff, as they were entitled, and we are bound, to do, would have been warranted in finding that had the speed of the truck been reasonable and prudent, or the driver been vigilant in keeping a lookout for pedestrians, the plaintiff might have avoided injury; and that the defendants were negligent in failing to yield the right of way to the plaintiff in violation of the provisions of § 55-2314, Oregon Code Supplement 1935, as that status has been construed by this court: *Maneff v. Lamer,* 148 Or. 455, 457 (36 P. (2d) 336). See the same case, 152 Or. 619, 625 (54 P. (2d) 287).

 The courts should not, in our opinion, relax rules intended to protect pedestrians at regular street

crossings from injury caused by careless drivers of automobiles and motor trucks, nor make arbitrary deductions of fact from evidence which in its essential nature is open to varying interpretations. As we have already observed, these cases generally present questions of fact. Accidents of this kind happen in the twinkling of an eye, and it is rarely, indeed, that the court is warranted in fixing the blame as a legal conclusion. So, here, the question of whether or not the defendants violated the right of way statute was essentially one of fact to be determined as such by the jury and not by the court.

 The court instructed the jury as follows:

"I instruct you that under the evidence as shown in this case defendants were under no duty to sound any warning to warn this plaintiff of the approach of their truck and that therefore the allegation of negligence based on failure to sound the horn of the truck or otherwise warn plaintiff of the approach of the truck is withdrawn from your consideration and you must disregard the same. However, so far as negligence is predicated on defendants' alleged failure to sound a horn, your consideration of this specification of negligence is restricted to the requirements of the law which I have read to you, and which I will again at this time call to your attention, and that is this: that the driver of any vehicle upon a highway, before stopping, starting or turning from a direct line, shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn."

It is contended that the instruction, insofar as it submitted to the jury the question of negligence based on the failure of the defendants to sound a horn, is abstract, and, further, that such portion of the instruction is inconsistent with the remainder.

Section 55-2309 (a), Oregon Code Supplement 1935, provides as follows:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn * * * ."

What we have said heretofore in our discussion of the evidence disposes of the contention that the instruction based upon this statute was abstract. The circuit court was right in submitting to the jury the question of whether or not it was the duty of the driver of the truck before turning from a direct line to give a warning by sounding his horn.

The complaint alleged that the defendants were negligent because they failed to give any sound or warning of the approach of the truck, and because they failed to give a signal of their intention to make a right-hand turn at the intersection. The latter allegation charged a violation of the statute which we have set out; the former, a breach of a common-law duty. See *Gano v. Zidell,* 140 Or. 11, 15 (10 P. (2d) 365, 12 P. (2d) 1118). We think that the court might well, under the evidence, have submitted both issues. As the only purpose of sounding the horn would be to give warning of the vehicle's approach, the instructions were, in a sense, inconsistent. As counsel for defendants put it, "Horns do not speak English." We observe, however, that statutes do, and it was evidently in the court's mind that the only duty of the defendants in this regard was the duty imposed upon them by the statute, and on that view the court complied with the defendants' request to instruct the jury that the defendants "were under no duty to sound any warning to warn the plaintiff of the approach of their truck." The court, four

times during the course of the instructions, explained to the jury the provisions of the statute which we have quoted, and taking the instruction complained of as a whole we think that it is fair to interpret it as meaning that the jury were to consider the matter of sounding a horn only insofar as it involved a violation of the statute. In any event, we are unable to see that the defendants were prejudiced. It is only inconsistency in instructions which may injuriously affect the party complaining or which misleads the jury, that furnishes ground for reversal of a judgment: 64 C. J. 671, § 600. The following language from the opinion in *Ghent v. Stevens,* 114 Conn. 415 (159 Atl. 94), conforms to the spirit of § 7-510, Oregon Code 1930, and is applicable here:

"The charge ought not to contain contradictory statements of the law or statements which might be so construed; neither ought the charge to be required to be, or expected to be, as accurate in its instructions upon legal propositions as the opinions of the court of last resort * * *. We examine the charge to see if it fairly presents the case to the jury, in such way that injustice was not done under the rules of law and the legal rights of either litigant, and not with a legal microscope to search for technical flaws, inexact, inadvertent, or contradictory statements."

We have examined the numerous cases from this and other jurisdictions cited by counsel for defendants in their carefully prepared brief, but see no necessity for analyzing them in this opinion. They are cited in support of propositions of law which rest upon facts that cannot be said to be conclusively established by the record in this case and therefore do not control its decision.

We find no reversible error, and the judgment of the circuit court is, therefore, affirmed.

BELT, J., not sitting.