Argued April 21; affirmed May 25, 1948

LYNCH, as Administrator, *v.* CLARK et al.

194 P. (2d) 416

James J. Kennedy, of Portland, argued the cause for appellants. With him on the brief were Maguire, Shields & Morrison, of Portland, and Norman K. Winslow, of Salem.

R. W. Skopil and Allan G. Carson, of Salem, argued the cause for respondent. With them on the brief was Wallace P. Carson, of Salem.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and BRAND, Justices.

BRAND, J.

The defendants, R. A. Clark and Robert Lynn Clark are partners doing business as the "Salem Taxi Service". The defendant, Gordon L. Clark, was on the 15th day of December, 1945, the driver of the defendants' taxi. On the evening of that day, the defendants' automobile collided with the decedent, causing the injuries from which he died. The collision occurred in a business district of the city of Salem, at the intersection of Front and Court streets. Front street extends in a general northerly and southerly direction and Court street in a general easterly and westerly direction. The defendant, Gordon Clark, was operating the vehicle in a southerly direction on Front street. The collision caused the immediate death of the decedent who left neither a widow nor any dependents surviving him. The plaintiff was duly appointed administrator of the estate of the decedent and brings the action for the benefit of the said estate.

· It is alleged that the defendant driver of the taxicab negligently struck the decedent resulting in his mortal injuries. There was evidence of the defendant's negligence in particulars specified in the complaint, sufficient to take the case to the jury. The defendants deny the alleged negligence and allege that the decedent was guilty of contributory negligence in failing to keep a

proper lookout; in crossing Front street at a place other than a marked or unmarked crosswalk; in failing to yield the right of way to defendants' taxicab, and in leaving a place of safety and in walking immediately in front of defendants' taxicab. It is asserted that the alleged negligence of the decedent proximately caused the collision and the injuries which resulted in his death.

After the case was put at issue upon the pleadings, the plaintiff moved the court for an order suppressing certain evidence and supported the motion by an affidavit of counsel for the plaintiff. The affidavit stated in substance that on the 15th day of December, 1945, after the death of the decedent, the deputy coroner, acting as such, without knowledge or consent of anyone, extracted from the body of the decedent a sample of blood, and that the blood was analyzed and that it was claimed by the attorney for defendants that the analysis of the blood was such as to evidence a state of intoxication on the part of the decedent at the time he was struck by the defendants' taxicab. It is the contention of the plaintiff that the extraction of blood from the decedent for the purpose of testing its alcoholic content constituted an unlawful search or seizure in violation of constitutional mandate. The court allowed the motion and suppressed the evidence concerning the extraction of the sample of blood and the analysis thereof. At the trial of the cause the defendants made an offer of proof to the effect that a sample of blood was taken and that upon analysis it was found to contain 18/100 grams of alcohol per 100 CCs of blood, indicating a state of intoxication which would impair judgment. This offer of proof was rejected by the trial court. The first question for determination is whether the trial court erred in suppressing the evidence and in rejecting the offer of proof. If there was

other evidence in the record tending to prove that the decedent was negligent and that such negligent conduct on his part proximately contributed to his own injury, then it is clear upon the authorities that the defendant would be entitled to show by proper evidence that the decedent was intoxicated at the time and the jury would be entitled to consider the evidence of intoxication in connection with all of the other evidence of the case in determining whether or not the decedent was guilty of contributory negligence. Under those conditions the admissibility of the suppressed evidence would be directly before us for decision.

We will first review the evidence which was received by the trial court for the purpose of determining whether it tends to show contributory negligence. As stated in the appellants' opening brief, the accident occurred in or near the intersection of Front and Court streets. Court street is approximately 71 feet wide and Front street is approximately 59 feet wide at the intersection. At the time of the accident, which occurred at about 8:45 P. M., the weather was cold and the pavement dry. The defendant Gordon Clark testified that he was driving south on Front street toward the intersection with Court street, at approximately 20 miles per hour, with dimmed lights. Concerning the events at the intersection, the defendant testified as follows:

"Q. And as you approached the intersection of Court Street there, did you see Victor Lynch in the street?

"A. No, sir.

"Q. What was the first that you knew of when the collision occurred?

"A. I was under the impression that I had hit a board or a box in the street. I didn't have any idea it was a man.

"Q. Well, you didn't see him then?

"A. No, sir.

"Q. Prior to the time he was struck?

"A. No, sir."

Upon cross-examination, he testified:

"Q. You were under the impression that you hit a board, is that correct?

"A. Well, some sort of an object.

"Q. Well, you told the jury you were under the impression you hit a board or a box or something like that?

"A. Yes, sir.

"Q. Did you ever have something like that come up to the windshield in front of you?

"A. I have never had anything like that happen to me.

"Q. What gave you the impression that it was a board or a box?

"A. Because I couldn't figure that it could be a man, because I didn't see the man at all.

"Q. You saw him when he came up in front of the windshield didn't you?

"A. Well, not by taking anybody by surprise that way, you wouldn't realize it.

"Q. But you saw some object come up and over up over the windshield and up over the top?

"A. Well, he didn't go over the top.

"Q. Well, up over the top?

"A. No, sir. He come up over the hood and by the window.

"Q. No part of him was up on top of your cab then, is that your testimony?

"A. Well, I don't know, sir."

Defendant testified that upon becoming aware of the fact that he had struck an object he stopped his car and discovered that he had struck a man. He took the decedent to the police station and shortly thereafter returned with officer Bowman to the scene of the acci-

dent. The defendant had informed the officer that the accident occurred at the intersection of Chemeketa and Front streets, which is one block north of the intersection of Front and Court streets. Before reaching the scene of the accident, however, defendant stated that he realized that he had mentioned the wrong street and immediately took the officer to the scene of the accident. The defendant testified as follows:

"Q. Just tell what was done while you were there?

"A. Well, Mr. Bowman had me show him where I struck Mr. Lynch and stepped off from the spot where I struck him until a spot where he stopped and took measurements there. I understand he took it with tape afterwards, but he stepped it off there and wrote it down and he asked how it happened and where—"

Omitting a conversation between counsel, the testimony continues as follows:

"Q. Do you remember how far the point that you have now just referred to was—which direction it was from the north line on Court Street, had Court Street been extended. The curb line been extended across?

"A. You want the measurement that he took, and I believe it was 9 feet and 10 inches. I wouldn't be sure about that, but it was 9 feet anyway.

"Q. What was there there at that place, Mr. Clark?

"A. Paint from the fender and the first blood on the street."

Officer Bowman testified:

"A. * * * Mr. Clark and I went to the intersection of Chemeketa and Front, which is the intersection he stated at the East Salem Fire Station was the one that the accident occurred on. Upon the arrival at Chemeketa and Front, he stated that

it had occurred on Court and Front. We proceeded to Court and Front and at this location found that the accident had occurred at that intersection.

"Q. What did you find there, please?

"A. There was quite a little bit of debris or glass, pieces of paint, cigarettes, matches at the intersection. At 9 feet 10 inches south of the north curb line of Court Street there was blood marks, and part of a box of penny matches. Part of a package of Lucky Strike cigarettes, and paint off of the cab; the Yellow Cab. At 60 feet 7 inches south of the north curb line of Court Street there was two large blood marks which indicated by the looks and by Mr. Clark's statement that that was the location that Lynch had been lying at the time he picked him up. This blood mark—these two blood marks were 60 feet 7 inches south of the north curb line on Court. One of them was 34 feet 5 inches west of the east curb line on Front; the other was 38 feet 7 inches west of the east curb line of Front.

"Q. Did you mention — you mentioned blood marks and paint from the cab. Was there a small piece of the cab 9 feet 10 inches south of the north curb line?

"A. Just a moment, I will check this book. I believe that is right. I do not have the exact location of the little piece of light rim of the glass which is a part of the parking light. I would hesitate to say whether that was right at that particular spot or not.

"Q. It was in that general neighborhood?

"A. It was in right amongst these cigarettes and matches, blood marks, and such as that, but I couldn't say it was right at 9 feet. It was right in that vicinity.

"Q. Was there more than one blood mark 9 feet 10 inches south of the north curb line extended of Court?

"A. Yes, there was several small ones. A matter of possibly from the size of a nickel or dime or quarter or something like that."

The officer testified further that there was a street light on the northwest corner of the intersection which was suspended over the sidewalk and out over part of the street. The light was an average normal street light. The witness testified that he saw no tire marks on the pavement between the northerly blood spots and the larger southerly ones. The testimony of the officer, which was supported by photographs introduced in evidence, disclosed that the left front headlight of the taxicab was broken; there was a large dent on the hood on the left side; there were rubbed marks on the windshield and rubbed marks on the top edge or left side of the cab. We quote:

"Q. Up on the body, you mean?

"A. On top of the body, indicating that something had slid along this side of the cab, the top part of the cab. These marks extended back to about the middle of the back door.

"Q. Of the cab?

"A. Of the cab. It was a 4 door car. The marks consisted of blood and dirt.

"Q. Blood and dirt?

"A. Yes, sir.

"Q. And were they old in appearance or fresh?

"A. No, they were fresh.

"Q. Were there any rubbed marks you noticed on the roof or top of the car toward the left?

"A. Well, these marks over the top of the car was directly above the windshield and on the left side that I just stated. They were not against the left side, you understand, they were directly above the windshield but on the left side, on the left side of the top of the cab. Maybe I should state it that way.

"Q. The roof of it?

"A. The roof, yes."

■■ Officer Bowman testified further that the defendant, Gordon Clark, stated that he had not seen the

pedestrian until after he had struck him and that Clark gave no further explanation. The court received in evidence a sketch prepared by the witness Bowman, disclosing the measurements which supported his verbal testimony. No witness saw the collision. We know of no further testimony which throws any light on the actual events. The burden of proof of contributory negligence was of course upon the defendant. We think that the evidence fails to disclose any conduct on the part of the decedent indicating negligence, much less is there any evidence tending to show that the conduct of the decedent proximately contributed to his injury. If upon this evidence alone the jury had returned a special verdict to the effect that the decedent was guilty of negligence proximately contributing to his own injury, we think it would have been the duty of the court to set such verdict aside. Reliance is apparently placed upon the conclusion expressed by the witness Clark, that he struck the decedent at a point 9 feet 10 inches south of the north curb line of Court street extended. That the statement of the witness was a mere conclusion is demonstrated by the fact that he never saw the decedent prior to the collision. As disclosed by the sketch of officer Bowman, the measurement southerly from the north curb line of Court street, a distance of 9 feet 10 inches, was made to the center of the small area which officer Bowman and the witness Clark found upon returning to the scene of the accident, and within which area the blood marks, cigarettes and portions of paint from the car were found. The conclusion that the collision occurred at that point must have been reached because of the fact that the first physical evidences on the street were found there. The force of the impact upon the body of the decedent was sufficient to damage the left front

headlight, dent the hood, and hurl the decedent over the left top of the car, and to cast his body southerly to a point 60 feet south of the north curb line of Court street. In view of those facts, it is impossible to believe that the blood and articles which were thrown from the body of the decedent by the force of the impact should have fallen at the exact spot where the first impact occurred. It follows that we cannot even say that there is any substantial evidence that the decedent was struck when he was south of the north curb line of Court street, and we find no evidence which tends to show that his own conduct proximately contributed to his death. We may add that both the violence of the impact and the testimony of an unimpeached witness to the effect that the driver Gordon Clark had a pint bottle of intoxicating liquor from which he drank shortly before going on shift at 6 P. M., cast serious doubts as to the accuracy of his testimony that he was driving only about 20 miles per hour.

The evidence makes it reasonable to assume that the decedent may have been crossing Front street, either to or from the sidewalk on the north side of Court street. In view of the violence of the impact which hurled his body from 50 to 60 feet, there is no reason to infer from the marks on the highway that he was outside of the unmarked crosswalk when struck. But, if the fact should be that he was a few feet south of the north curb line of Court street when struck, we are unable to see, from that fact alone, that his presence there, rather than a few feet further north, would have contributed to the cause of his injury. It is true that if he was in the crosswalk when hit, he was entitled to claim the right of way over the vehicle approaching from the north, and if he was materially south of the

crosswalk, the operator of the vehicle would have had the right of way, but one not having the right of way is not guilty of negligence merely because of that fact, if he exercises the care required of a person in that situation. *Keys v. Griffith,* 153 Or. 190, 55 P. (2d) 15, presents the case of a pedestrian who crossed a highway where there was no intersection or crosswalk. The court said:

> "It has been repeatedly held by this court and it seems to be the rule generally that, when a pedestrian, who is about to cross a street or highway, sees an automobile approaching at such a distance from him that would lead a reasonable person to believe he can cross in safety, he has a right to proceed without waiting for the automobile to pass, and is not guilty of contributory negligence in so doing. The question in such a case is: Did the pedestrian use that degree of care for his own safety which an ordinarily prudent person would use in the same place and under the same conditions? * * * " See also *Maneff v. Lamer,* 152 Or. 619, 54 P. (2d) 287.

■ And as this court said in *Manning v. Helbock,* 135 Or. 262, 295 P. 207:

> " * * * Indeed, there is very reputable authority to the effect that a pedestrian is entitled to the benefit of such right of way rule, notwithstanding he was not exactly within the pedestrian crossing, but a few feet outside the boundary line: Berry on Automobiles (6th Ed.) section 357; Blashfield's Encyclopedia of Automobile Law, vol. 1, p. 590, citing Horney v. Giering, 132 Wash. 555 (231 P. 958), and Yanase v. Seattle Taxicab and Transfer Co., 91 Wash. 415 (157 P. 1076)."

■ We agree with the statement of this court that it is almost invariably a question for the jury to determine "whether a pedestrian who is struck by an auto-

mobile *at or near* a regular street crossing has been guilty of contributory negligence", *Dixon v. Raven Dairy,* 158 Or. 186, 75 P. (2d) 347, but, it is also true that almost invariably there is some evidence concerning the conduct of the pedestrian in addition to the bare fact that he was struck at or near the crossing.

In view of our conclusion that there is no substantial evidence of any conduct of decedent at the scene of the accident tending to show contributory negligence, it becomes necessary to determine whether the introduction of evidence of intoxication "impairing judgment" would have been sufficient to raise a jury question.

We will first observe certain distinctions. This is not a case in which an injured pedestrian testifies as plaintiff and evidence of his intoxication is introduced to cast doubt on the accuracy of his observation or memory, nor is it a case in which habitual intoxication is offered as bearing on the life expectancy of a deceased person, nor is it a case in which evidence of intoxication is coupled with evidence of staggering or with evidence of any other conduct tending to prove contributory negligence. It is not a case in which evidence of intoxication is introduced against the driver of a motor vehicle under statutes rendering one guilty of negligence per se or of crime if he drives in that condition.

■ It is self-evident that inward intoxication cannot be the proximate cause of one's injury unless the inward condition is translated into outward conduct. While some authorities state loosely that intoxication may be some evidence of negligence on the part of a pedestrian, we do not understand them to mean that mere intoxication in the absence of any evidence of conduct is sufficient to take to the jury an issue of negligence proximately contributing to an accident.

*Ford v. Umatilla County,* 15 Or. 313, 16 P. 33, was a case in which the plaintiff sued the county for negligence in the maintenance of a bridge. The defendant alleged that the plaintiff was intoxicated at the time and was guilty of contributory negligence. The court said:

" * * * There is no pretense that respondent drove his team carelessly or recklessly, or did any act which contributed to the injury except in attempting to cross the bridge, and the appellant, in the manner before suggested, invited him to do that. If the burden of proof is to be shifted in such a case in consequence of the intoxication of the plaintiff, it must be upon the ground that a drunken man is presumed to be careless in what he does: and that, therefore, proof of his being drunk authorizes the inference that he is guilty of negligence. The law will not excuse a person who has committed a wrong because he was intoxicated at the time; but that it will presume him guilty from that fact, cannot in our opinion be maintained. If the respondent was intoxicated at the time of the occurrence, it was a circumstance tending to corroborate proof of carelessness; but, standing alone, it was not such proof. The appellant had, in order to make out its defense, to prove that the respondent was careless, whether drunk or sober, unless, as before suggested, such proof appeared from his own showing."

In *Parker v. Smith Lumber Co.,* 70 Or. 41, 138 P. 1061, the action was brought by the administrator of the decedent who was driving a motorcycle and ran into a pile of wood left by the defendant in the street. The jury expressly found that the decedent was intoxicated and that his intoxication contributed proximately to his injury. Upon appeal it was held that the following instruction correctly stated the law:

" ' * * * if you believe from the evidence the plaintiff was so intoxicated that he had lost such

control of his brain or muscles as an ordinary prudent and cautious man, in the full possession of his faculties, would exercise under similar conditions, and the defendants were ignorant of such condition, and if you further find from the evidence that such intoxication contributed proximately to the alleged injury, then the plaintiff cannot recover.' '' (Italics ours.)

The court quoted with approval from 2 Wood, Railroads, page 1457, as follows:

" 'The fact that the person injured was at the time intoxicated does not necessarily constitute contributory negligence on his part, though this fact is to be considered with others in determining whether or not he exercised ordinary care to protect himself.' ''

*Meyer v. Pacific R. R.,* 40 Mo. 151, was an action by the widow to recover for the death of her husband who was killed in a collision with a railroad train. The court gave the following instruction:

"If the jury believe that at the time deceased received the injuries complained of he was so intoxicated as to be unable to exercise, *and did not exercise,* the care and prudence ordinarily exercised by prudent and sober men while traveling upon railroads, and that such inability and want of care on his part *directly* contributed to cause the injuries aforesaid, plaintiff cannot recover."

The portion in italics was added by the court as a modification of an instruction requested by the defendant. On appeal the court said:

"In our opinion, the court stated the law correctly. Unless Meyer's intoxication directly contributed to cause the injury, and in consequence thereof he did not exercise ordinary care and prudence, we do not see how it should be made to operate to the detriment of the plaintiff. The very proposi-

446

tion is monstrous, that because a man is drunk, although that is not the proximate cause of the injury, he is therefore placed beyond the pale of legal protection and may be killed with impunity."

In *Ward v. Chicago, St. P., M. & O. Ry. Co.,* 85 Wis. 601, 55 N. W. 771, the court said:

"There is nothing in the conduct of the plaintiff that suggests even a suspicion of the want of ordinary care. The question of his being intoxicated is not, therefore, properly in the case."

In *Scott v. Gardner,* 137 Tex. 628, 156 S. W. (2d) 513, 141 A. L. R. 50, the plaintiff was a guest and the issue related to the alleged negligence and intoxication of the defendant. Although the issue was unlike that of the case at bar, the language used by the appellate court is pertinent here:

" 'The test is not, as is suggested in the brief for the appellant, the good intentions or mental attitude of the driver but rather his acts and omissions. * * * "It is the actions and conduct, and not the mental attitude of the actor, that measure the degree of care * * *."' * * *"

In *Meredith v. Arkansas Louisiana Gas Co.,* (La.), 185 S. 498, the court said:

"The allegation of intoxication is not borne out by the testimony, if it was it did not have any bearing on the accident under the facts found by us. Intoxication alone is not sufficient to constitute negligence. 45 Corpus Juris, 997, § 551."

In *Winfrey v. Missouri, K. & T. Ry. Co.,* 194 Fed. 808, the court quoted with approval as follows:

"Hutchinson, in his work on Carriers (volume 3, par. 1230), announces this rule:

" 'Intoxication does not per se constitute contributory negligence, but is a matter to be taken into consideration as bearing on the question

whether the passenger has, by his own conduct, brought the injury upon himself. The law exacts from one who is voluntarily intoxicated the same degree of care and caution in avoiding an exposure of his person to danger as it exacts from a sober person of ordinary prudence under like circumstances.' ''

The court also quoted from *Trumbull v. Erickson,* 38, C. C. A. 536, 97 Fed. 891, as follows:

" 'The authorities are uniform that the mere fact that a person, when injured, was intoxicated, is not in itself evidence of contributory negligence, but that it is a circumstance to be considered in determining whether his intoxication contributed to his injury. If it did, he cannot recover. If it did not, it will not excuse the defendant's negligence.' ''

In *Rockefeller v. Shreveport Yellow Cabs,* (La.), 183 S. 141, the court said:

"The evidence conclusively shows that Reagor was not intoxicated and not without the control of his faculties. However, if he had been intoxicated, it is necessary that he commit some act of negligence before he could be condemned in this case, and none has been shown."

In *Olstad v. Fahse,* 204 Minn. 118, 282 N. W. 694, there was evidence by an eye witness concerning the circumstances of the accident in which the decedent lost her life. The court said:

"The evidence that was offered to the effect that Miss Phillips had been drinking and to some extent was under the influence of alcohol presents a more difficult question. She was, under the law, required to exercise the same degree of care as that required of a sober person. On the question of her contributory negligence if her intoxication, if any, contributed proximately to her death it was admissible as evidence of contributory negligence, but

unless it did so contribute or unless she failed to exercise the degree of care required of a sober person, the mere fact that she may have been under the influence of alcohol did not constitute contributory negligence. * * * "

In *Cofone v. Gnassi,* 5 N. J. Misc. 343, 136 At. 505, the court said:

"But even if the deceased was intoxicated, that, by itself, would not charge him with contributory negligence, * * * "

In *Lynn v. Stinnette,* 147 Or. 105, 31 P. (2d) 764, the plaintiff as administrator sought to recover on account of the death of the decedent who, while walking in a street between two intersections and pushing his bicycle, was struck by an automobile. The question presented in that case was whether evidence of intoxication by the decedent was admissible when intoxication had not been specifically pleaded. The issue presented by the case at bar was not considered by the court. It was held that evidence of intoxication was admissible under the general allegation that the decedent had failed to keep a proper lookout. In that case the court quoted with approval from *Northern Pacific R. Co. v. Craft,* 69 Fed. 124, as follows:

" ' * * * The fact, if proven, that the defendant's servant whose negligence may have caused the injury was intoxicated at the time of the accident was not in itself an act of negligence, but it was a circumstance to be considered with the other evidence tending to prove the charge laid in the complaint. The negligence, if any there was, upon the part of the defendant's servants, consisted in their failure to take proper precautions while driving the engine through the yard, not in the fact that Stapleton or anyone else was intoxicated. But evidence of such intoxication might properly be considered in connection with the other proof which

was adduced showing Stapleton's actions and conduct at the time the accident occurred.' "

As this court has stated:

" * * * There are different degrees of drunkenness, but in a legal sense a person is drunk when he is so far under the influence of intoxicating liquor that he is not entirely himself, and his unusual appearance — flushed face and staggering walk—attracts the attention of others * * * ". *State v. McDaniel,* 115 Or. 187, 231 P. 965, 237 P. 373.

Concerning the lesser condition, that of being under the influence of intoxicating liquor, this court has laid down the following rule:

"The effects resulting from the drinking of in-toxicating liquors, are manifested in various ways, and before anyone can be shown to be under the influence of intoxicating liquor, it is necessary for some witness to prove that some one or more of these effects were perceptible to him. * * * ". *State v. Noble,* 119 Or. 674, 250 P. 833.

■ It will be observed that the usual definitions of intoxication are couched in terms of the perceptible; unusual appearance, flushed face, staggering walk and the like. In the case at bar, the defendant introduced as an offer of proof the testimony of Dr. Joseph Beeman who stated that the quantity of alcohol found in the decedent's blood indicated that he had been intoxicated. Dr. Beeman added, "By Intoxicated I mean under the influence of alcohol to the extent where judgment is impaired, but not necessarily what is commonly spoken of as being drunk." The tests applied in the McDaniel and Noble cases, supra, may require some modification in view of the techniques developed since those cases were decided. When the ultimate issue is intoxication, as in drunken driving cases, it may be

that evidence of the alcoholic content of the blood, properly secured and presented, may suffice to prove intoxication. Be that as it may, a blood test to determine intoxication is more remote from conduct, and therefore from contributory negligence, than the tests based upon perceptibility because of the known fact that the same quantity of alcohol in the blood does not produce in all persons the same degree of perceptible divergence from the normal. In view of this fact we may wisely limit our decision in the pending case to the narrow issue presented. We hold that in the absence of other evidence tending to show contributory negligence, evidence derived solely from a blood test indicating intoxication as defined by Dr. Beeman was insufficient to present a jury question of contributory negligence. Since the proffered evidence was properly rejected for the reasons indicated, it follows that it is unnecessary to decide whether the removal by the coroner of a small quantity of blood from a corpse constitutes an unlawful search or seizure, and if it does, then whose constitutional rights, if any, are violated thereby, and if violated, whether that fact would render the evidence inadmissible. We think the trial court should not have instructed on contributory negligence, but since the verdict was for the plaintiff the error was immaterial.

The legal standard of care is largely an objective one. The question is whether the plaintiff, drunk or sober, exercised that degree of care which an ordinary prudent man would exercise under the circumstances. Upon the issues thus stated, there was no substantial evidence of contributory negligence and proximate causation sufficient to go to the jury.

■ One other question requires brief consideration. It will be recalled that there was direct testimony to the

effect that the defendant, Gordon Clark was seen drinking intoxicating liquor from a pint bottle at about 6 o'clock on the evening of the collision. Upon cross-examination by counsel for the plaintiff, the witness denied that he had taken anything to drink on the night of the accident. Pursuing the question further, counsel asked the defendant the following question: "Q. About December 12, 1945, you were in the habit of drinking some intoxicating liquor, weren't you?" To this question the defense objected and moved for a mistrial. The objection was sustained and the motion for a mistrial was denied. Thereafter counsel for the plaintiff asked the witness, "Did you ever have a drink of intoxicating liquor?" The defense again objected and moved for a mistrial. The objection was again sustained and the motion for a mistrial was denied. We think that counsel should not have insisted on propounding the last question quoted after the ruling of the court, but, in view of the fact that the defendant answered none of the questions concerning his previous habits, we think it was within the discretion of the trial court to deny the motion for mistrial. The judgment is affirmed.