Argued December 3, 1962, reversed and remanded
February 27, 1963

# MYHRE *v.* PETERSON
378 P. 2d 1002

W. A. *Franklin*, Portland, argued the cause for appellant. On the brief were Anderson, Franklin, Jones & Olsen.

*Asa Lewelling*, Salem, argued the cause for respondent. On the brief were Lewelling & Gies.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

LUSK, J.

Plaintiff was struck by an automobile driven by defendant, sued to recover damages for his injuries, and the jury returned a verdict for the defendant. Plaintiff has appealed from the consequent judgment, assigning as error two instructions given by the court.

Plaintiff was a railroad telegraph operator in the employ of the S P & S Railway Company. He worked in the company's depot located at the northwest corner of the intersection of Front and Chemeketa streets in Salem. Chemeketa street runs east and west. Front street runs north and south and has on it, in about the center, two sets of railroad tracks. In the early morning of November 24, 1960, apparently be-

tween one and two o'clock, plaintiff was required to leave the depot, walk part way across Front street to the vicinity of the railroad track, and deliver to the fireman on the locomotive of a train coming from the south an order or message known in railroad parlance as a "list." The list is secured at the end of a stick called a hoop and handed up to the fireman as the train passes. As the plaintiff, after delivering the list to the fireman, was returning to the depot, he was struck by defendant's automobile, which was being driven in a southerly direction on Front street. It was a rainy, windy night.

The plaintiff alleged in his complaint, among other charges of negligence, that the defendant failed to yield the right of way. The court, on motion of the defendant, removed this issue from the consideration of the jury, being of the opinion that there was no evidence that at the time of the accident plaintiff was within the "unmarked crosswalk" at the intersection and hence that he was not entitled to the benefit of the right-of-way statute, ORS 483.210(1). Plaintiff testified that in going from the depot to perform his errand he walked in the unmarked crosswalk, delivered the list to the fireman of the locomotive, and remembered nothing thereafter until he woke up in the hospital. The fireman corroborated his testimony by stating that he saw the plaintiff walk out from the depot and that he was in the crosswalk when he delivered the list. The defendant testified, in substance, that he was blinded by the headlight of the approaching locomotive and that the plaintiff, when the defendant first saw him, was standing with "his hands on my radiator." His testimony given in a pretrial deposition was somewhat different. He said there that when he first saw the plaintiff the latter was

four or five feet directly in front of his radiator. He testified that he struck plaintiff "in the intersection" and that the plaintiff was "out from the engine at lease six, seven, eight feet, something like that". He did not say where in the intersection the accident occurred. After the accident the defendant's car came to rest with its right front wheel two paces—about six feet—north of the south curb line of Chemeketa street and in line with the west curb line of Front street, and the plaintiff was lying in the street slightly to the rear of the car and between it and the railroad track.

The train was moving at a speed of about ten miles per hour. The fireman saw the automobile approaching at a speed of about twenty miles per hour. He saw the top of the car as it passed the engine after he received the list and immediately thereafter heard a thud and screech of brakes and looking back saw the plaintiff lying in the street. He estimated that in his position in the cab which was towards the rear of the engine he was then from 50 to 75 feet from the north line of Chemeketa street. He ordered the train stopped and went back to the scene of the accident.

We think that under this evidence and the decision of this court in *Manning v. Helbock et al,* 135 Or 262, 295 P 207, the question whether the plaintiff was in the crosswalk when he was struck by defendant's automobile was for the jury. The direct evidence establishes that he was in the crosswalk when he handed up the list to the fireman. After that he would have returned to his duties in the depot but for the accident. His most direct route was the same as that by which he came, the crosswalk. No reason appears for him to deviate from that route. Under the evidence most favorable to the plaintiff, he was struck less than four

seconds after delivering the list and when he was as little as six feet—two paces—from the point where he then stood. We think that an inference could reasonably be drawn from the whole of the evidence that he traveled these six feet in the crosswalk or at least as close thereto as to give him the protection of the right-of-way statute. *Lynch v. Clark et al,* 183 Or 431, 442, 194 P2d 416; *Manning v. Helbock,* supra, 135 Or at 267. Of course, the position of the plaintiff in the street after the accident is evidence which may be considered as pointing to a different conclusion, but, since a person colliding with an automobile may be carried a considerable distance before falling to the ground, this circumstance is not conclusive. Cases from other jurisdictions supporting the view we take of this question are *MacHale v. United States,* 81 F Supp 372 (WD Wash 1948); *Warshaw v. Reichman,* 145 NYS2d 237; *Lambrecht v. Archibald,* 119 Colo 356, 203 P2d 897; *Bohnenkamp v. Hibberd* (Ohio App) 41 NE2d 259; *Novak, Admx., etc. v. Chi & C Dist Tr Co et al,* 235 Ind 489, 135 NE2d 1.

ORS 483.210(1) reads:

"When traffic control signals, if any, are not in operation, a driver of a vehicle shall stop and yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, if the pedestrian is on the half of the roadway on and along which the vehicle is traveling or is approaching such half from the other half of the roadway so closely as to be in danger; but in proceeding to cross, or in crossing, the roadway the pedestrian shall not leave a curb or other place of safety suddenly and move into the path of a vehicle which is so close that it is impossible for the driver to yield."

The defendant argues that the statute does not apply to this case, for various reasons. It is said that the plaintiff was not a "pedestrian crossing the roadway" within the meaning of the statute because he was a workman required to go into the street by his employer to perform a job, and that the requirement that the motorist yield the right of way to a pedestrian who is approaching the half of the roadway along which the vehicle is traveling from the other half so closely as to be in danger, cannot be applied unless the pedestrian is completing the crossing. It is further suggested that the presence of the train passing through the intersection would lead a motorist to believe that pedestrians would not be crossing the street at that time. Defendant cites no authority for his contention and plaintiff's brief ignores it.

The basic question seems to be whether the word "crossing" in the statute is to be given its ordinary significance of passing from one side to the other. Webster's New International Dictionary (2d ed); 25 CJS 10. In a criminal prosecution for violation of the California Vehicle Act the court adopted that construction, but only to avoid absurd consequences. *People v. Hawkins,* 51 Cal App 2d 779, 781, 124 P2d 691, 692. But in a civil action where one of the questions was whether the plaintiff had violated an ordinance that prohibited pedestrians from crossing streets except at intersections, and it was argued that the plaintiff was not crossing the street, but was merely going from one point in the street to the sidewalk, the court said: "* * * it seems to us to be splitting hairs to say that a person is not engaged in crossing a street merely because he has not traversed the entire street from curb to curb. Suppose he had alighted from an automobile instead of from

a streetcar." *Mathes v. Schwing,* 11 La App 5, 123 S 156, 158. We agree with this view. The statute was intended to promote the safety of pedestrians and should be given a construction in furtherance of that object. A person leaving the sidewalk to board a streetcar, for example, needs the protection of the statute as much as though he was intending to complete the crossing to the other side. And so of the plaintiff in this case. The fact that the pedestrian is engaged on some business of his employer is immaterial, though if the plaintiff in this case had been struck by the automobile driven by the defendant while standing in the street and handing the list up to the fireman of the locomotive, he would have ceased to be a pedestrian and a different question would arise. See *Newton v. Thomas,* 137 Cal App 2d 748, 762, 291 P2d 503, 511. We agree that the provision of the statute that the motorist must yield to the pedestrian if the latter is approaching the half of the roadway on which the motorist is traveling so closely as to be in danger has no application to a case where the pedestrian does not enter the motorist's half of the roadway, but that fact does not, to our mind, indicate that the statute does not cover a partial crossing. While it may be true, as counsel for defendant argues, that a motorist might assume that no one would venture a crossing while a train is passing along the center of the street, yet, as the legislature, which presumably knows that trains do run on the streets of our cities, did not choose to make an exception in that regard, the court cannot do so.

We think that the court below erred in withdrawing this issue from the jury.

■ The defendant in his answer charged the plaintiff with contributory negligence in failing to keep a

lookout. The plaintiff requested the court to remove this charge from the consideration of the jury. The request was denied and the issue was submitted to the jury by the court in its instructions. The ruling is assigned as error. It is true that there is no direct evidence that the plaintiff failed to keep a lookout, but there seldom is in this class of cases. The fireman of the locomotive testified that he saw the approaching automobile at a distance of 150 to 200 feet. The jury might have concluded that the plaintiff likewise could and should have seen it and that his failure to do so was the proximate cause of the accident. We think that it was a jury question. *Barnes v. Winkler,* 216 Or 130, 337 P2d 816.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.