Argued October 11, 1978, affirmed February 21, 1979

CARTER, *Appellant,*
*v.*
MOTE, *Respondent.*
(TC 36-324, SC 25599)
590 P2d 1214

Martin Schedler, Portland, argued the cause and submitted briefs for appellant.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and Gordon Moore, Portland.

Before Denecke, Chief Justice, and Holman, Howell and Lent, Justices.

LENT, J.

**LENT, J.**

This is an action by a pedestrian against the driver of a pickup truck. Plaintiff seeks damages for personal injuries allegedly resulting from the negligence of the defendant in operation of the truck. Upon special interrogatories, the jury returned a verdict finding defendant was not negligent. Plaintiff appeals from the judgment entered upon the verdict. We affirm.

Both of plaintiff's assignments of error are for failure to give requested instructions. The instructions in question were designed by plaintiff to present her contention that defendant was negligent as a matter of law by reason of violation of certain statutes pertaining to pedestrian and motorist in a situation involving the motorist starting and turning her vehicle and involving an unmarked crosswalk. The pertinent statutes at the time of the incident, November 21, 1975, were ORS 483.006(4)(a), 483.126(1), and 483.210(1), (4) and (5),[1] which provided:

"(4) 'Crosswalk' means:

"(a) * * * that portion of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the street or highway measured from the curbs or, in the absence of curbs, from the edges of the traveled roadway to the property lines; or the prolongation of the lateral lines of a sidewalk, to the sidewalk on the opposite side of the street, if the prolongation would meet such sidewalk;" ORS 483.006(4)(a)

"(1) When traffic control signals, if any, are not in operation, a driver of a vehicle shall stop and yield the right of way to a pedestrian crossing the roadway within * * * any unmarked crosswalk at an intersection, if the pedestrian is on the half of the roadway on and along which the vehicle is traveling or is approaching such half from the other half of the roadway so closely as to be in danger; * * *.

---

[1] Subsection (4) was eliminated from ORS 483.006 by Oregon Laws 1975, ch 451, § 222, and ORS 483.126 and 483.210 were repealed by ch 451, § 291, all effective July 1, 1976. The new versions of these statutes are found in ORS ch 487.

"* * * * *

"(4) Every pedestrian crossing a roadway at any place other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway. * * *.

"(5) This section does not relieve the driver of a vehicle or a pedestrian from the duty to exercise due care." ORS 483.210(1), (4) and (5).

"(1) The driver of any vehicle upon a highway before starting, stopping, changing lanes or turning from a direct line shall first see that such movement can be made in safety. If any pedestrian may be affected by such movement the driver shall give a clearly audible signal by sounding the horn. * * *." ORS 483.126(1).

■ It is first necessary to determine to what version of the facts we are to apply the relevant law. In her brief defendant took issue strongly with the statement of facts set forth in plaintiff's brief. Defendant contends that after verdict in her favor this court, for the purposes of this appeal, must view the facts in the light most favorable to defendant, citing *Hess v. Larson,* 259 Or 282, 486 P2d 533 (1971) and *McPherson v. Cochran,* 243 Or 399, 401, 414 P2d 321 (1966) as standing for that proposition. Such a proposition was stated and applied in *Hess* and *McPherson* to the issues upon appeal in those cases.

"This is an action for personal injuries arising out of an automobile accident. * * * defendant alleged contributory negligence on plaintiff's part, which plaintiff denied. A trial was held and the jury returned a verdict for defendant. Plaintiff appeals.

"Plaintiff's first assignment of error contends that the trial court erred in denying her motions to take from the jury the allegations that she was negligent in the matters of speed, lookout, and control. In determining whether the trial court correctly submitted these issues to the jury we review the evidence in the light most favorable to defendant. *McPherson v. Cochran,* 243 Or 399, 401, 414 P2d 321 (1966). * * *" *Hess v. Larson, supra,* 259 Or at 284.

We agree with the application of the proposition in that context. Plaintiff's position in *Hess* amounted to asking for a directed verdict in his favor on the issue of contributory negligence, and under well-settled rules of law in this jurisdiction where the motion is denied and verdict is adverse to the movant, the party prevailing before the jury is entitled to have the evidence viewed in the light most favorable to him in determining whether there was error in denying the motion.

*McPherson* presented a similar situation. There verdict was for defendant, and plaintiff assigned as error the refusal of the trial court to instruct the jury that defendant was negligent as a matter of law and the refusal of the trial court to take from the jury the charges of contributory negligence. Again, this amounted to a motion by plaintiff for directed verdict on the issue of liability. The court rightly viewed the evidence in the light most favorable to defendant.

Logic tells us, however, that in a case where the party losing before the jury contends that the loss was by reason of the failure of the court to give a requested instruction which would have apprised the jury of the respective rights and duties of the parties applying to a given fact situation, the losing party is entitled to have the evidence viewed in the light most favorable to the establishment of the facts necessary to require the instruction. Compare, *Manning v. Helbock et al*, 135 Or 262, 266, 295 P 207 (1931): A party is "clearly entitled to have his theory submitted to the jury if there was any competent evidence to support it." "It is well supported by authority that in presenting the law of a case to the jury the court must instruct on the law applicable to all theories of the case that are supported by any competent evidence." *Anderson v. Wallowa National Bank,* 100 Or 679, 700, 198 P 560 (1921).

We now turn to the evidence to determine whether plaintiff was prejudiced by the failure to give her two requested instructions. In doing so we note only that

[279]

evidence[2] which pertains to these assignments of error. Because of the peculiar nature of the intersection we shall resort to a sketch thereof not drawn to scale. The sketch is patterned, however, upon plaintiff's Exhibit No. 3 received in evidence. That exhibit purported to be drawn to scale and thus admits of calculating certain distances from object to object as marked on the exhibit by the witnesses during trial.

It is undisputed that shortly before 1:00 p.m. on November 21, 1975, plaintiff was walking in a southwesterly direction on the sidewalk of S. W. Pacific Hwy. shown on the sketch. It was her intention to

---

[2] Both parties have regaled us with highly entertaining reference to the nature and extent of plaintiff's injuries. No other mention of that evidence will be made herein because it is completely irrelevant to our task.

proceed to a shop located somewhat past the intersection of Pacific Hwy. and S. W. Villa Ridge Way and on the same side of Pacific Hwy. as she was proceeding. She was dressed in light colored, easily visible clothing.

Defendant was cperating a pickup truck, about 18 to 20 feet in length, in a southwesterly direction on Pacific Hwy. intending to make a left turn onto Villa Ridge Way. Pacific Hwy. is a four lane highway with two travel lanes in each direction with a left turn refuge provided for such a turn. As shown there is a marked center line going a short distance down Villa Ridge Way from the approximate boundary of the intersection. Defendant had stopped in the left turn refuge to allow traffic to clear for her turn. Having done so, she proceeded to make the left turn (which necessarily is almost a U turn) and came on to Villa Ridge where her vehicle struck plaintiff. Defendant did not see plaintiff until a split second before the impact.

Plaintiff sustained head injuries and has no recollection of any of the events from the time she stepped off the sidewalk until she awakened in the ambulance. Defendant is the only eyewitness to the collision. Defendant and two other witnesses testified to the events leading up to the collision.

Phil Moore was the operator of another pickup truck at the intersection. He testified that he had been proceeding on Villa Ridge toward the intersection, intending to make a left turn to proceed southwesterly on Pacific. He testified that he stopped at the stopline in obedience to the stop sign at the intersection with his vehicle being close to the center line of Villa Ridge. This is shown on the sketch as "PM-2." He saw plaintiff on the sidewalk and waited for her to pass. He testified that she walked past the front of his vehicle and past Villa Ridge center line and then turned and proceeded "not four feet" from the witness on the left side of his vehicle to a point outside his vision. On

Exhibit No. 3 he marked her path from the sidewalk to the place he could no longer see her. On the sketch this is shown as the solid line from the sidewalk to the place where the line intersects the dotted line shown to the witness' left. Moore admitted that he may have told Killian, the investigating policeman, that he stopped at the stop sign rather than the stopline but explained that if he did, he meant stopline.

The defendant testified that she made her left turn along the path shown by the dash/dot line on the sketch to the point of impact at "Y-1." She said that at that time the rear of her vehicle was just clear of Pacific Hwy. at oblong "K. M." on the sketch. She testified that after impact plaintiff was lying at "Y-2." She admitted that she did not sound her vehicle horn at any time prior to impact. She testified that Phil Moore was stopped at "PM-3" as shown on the sketch.

Tigard police officer Killian investigated the incident, arriving shortly thereafter. This witness illustrated his testimony, as did Moore and defendant, by marking on Exhibit No. 3, from which the sketch in this opinion is derived. His testimony was based upon physical evidence he found at the scene and upon the statements made to him by Moore and defendant. He placed Moore at "PM-1" but his testimony is confusing as to whether Moore told the witness that Moore had stopped at the stopline or the stop sign. He marked plaintiff's route of travel from the sidewalk to "X-1," representing the point of impact and at "X-2" as the location to which she was thrown by the impact. He marked her route of travel as shown by the uniform dash line on the sketch. By the other uniform dash line on the sketch he indicated defendant's line of travel from the left turn refuge to the point of impact.

We have summarized the testimony of the witnesses in what we consider to be the light most favorable to plaintiff for the purposes of the assignments of error. We are not completely sure whose summarized version or what composite version should

be accepted as being most favorable to plaintiff, however, and have consequently directed attention to each witness' version.[3]

One vital inference is reasonably clear. Since Exhibit No. 3 was drawn to scale and the witnesses were advised of that before marking the exhibit, and because the uncontradicted evidence shows defendant's vehicle was 18 to 20 feet in length, one must conclude from all of the evidence that plaintiff was at least 15 feet from the closest lateral line or closest prolongation line of the sidewalk shown on the sketch. (On oral argument before this court her counsel conceded that point "A" on the sketch was the end of the unmarked crosswalk for this particular crossing.)

Plaintiff assigns as error the failure of the court to give the following requested instruction:

"The statutory law of the State of Oregon provides that dimensions of an unmarked crosswalk include:
'That portion of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the street or highway measured from the curbs or, in the absence of curbs, from the edges of the traveled roadway to the property lines; or the prolongation of lateral lines of a sidewalk, to the sidewalk on the opposite side of the street, if the prolongation would meet such sidewalk.'
If you find that the plaintiff was walking within, or even a few feet from, the unmarked crosswalk at this intersection, and also that at such time there was no traffic approaching within such distance as to make it impossible for such traffic to yield, then she had the right to proceed and it was the duty of the driver of an

---

[3] In opening statement plaintiff's emphasis was upon the alleged failure of defendant to keep a proper lookout. In argument to the jury she took the position that the "independent" witness, Killian, was mot to be heeded. (Phil Moore was an acquaintance of long standing of defendant's husband.) Killian's evidence, however, shows that plaintiff immediately departed the crosswalk when she stepped from the sidewalk and that she continued *away from* the crosswalk at about a sixty degree angle until she was struck.

approaching automobile, under such circumstances to stop and yield the right-of-way. If these are the facts then you would find the defendant's conduct constitutes negligence in and of itself and that the defendant was negligent in this particular."

The court gave the following instructions:

"* * * The plaintiff Carter alleges the defendant Mote was negligent in failing to yield the right of way to plaintiff. In this regard I instruct you that a crosswalk is defined as follows: it is that portion of a roadway at an intersection included within the connection of the lateral lines of the sidewalks or [sic] opposite sides of the street or highway measured from the curbs or in the absence of curbs, from the edge [sic] of the traveled roadway to the property lines of the prolongation of the lateral lines of a sidewalk to the sidewalk on the opposite side of the street if the prolongation would meet such sidewalk. And I instruct that you [sic], when traffic control signals, if any, are not in operation, and there were none in this case, a driver of a vehicle shall stop and yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, if the pedestrian is on the half of the roadway on and along which the vehicle is traveling or is approaching such half from the other half of the roadway so closely as to be in danger. * * *."

In her brief on appeal plaintiff sets forth an exception as follows:

"My exception, Your Honor, is to the language of the Court in describing the marked or unmarked crosswalk and in connection with the Court's instructions that the pedestrian would have to be within the marked or unmarked crosswalk when it is my understanding that the Oregon courts upheld that either within the marked or unmarked crosswalks or within reasonably close proximity thereto."

She also correctly asserts the law imports an exception to the failure to give a requested instruction. ORS 17.510; *Galego v. Knudsen,* 282 Or 155, 165, 578 P2d 769, 774, 775 (1978). On this appeal, despite the

exception taken, plaintiff does not assign as error the instruction given as set forth above.

For support for her contention that if she is "even a few feet from" the crosswalk she is entitled to the same rights as a pedestrian within a crosswalk, plaintiff principally relies upon *Myhre v. Peterson,* 233 Or 470, 378 P2d 1002 (1963). In that case the intersection involved was Front and Chemeketa in Salem. Front runs north-south and Chemeketa intersects at right angles. Plaintiff had gone on a dark rainy night from the northwest corner part way across Front to deliver something to a fireman in a passing train. The evidence indicated he was within the unmarked crosswalk on the way to the train. Defendant was driving south on Front between the west curb of Front and the railroad tracks which ran down the center of Front. Plaintiff's most direct route back to the place where he was working would have been the same crosswalk to the northwest corner of the intersection. Defendant's vehicle struck plaintiff and came to a stop almost through the intersection with plaintiff being found on the pavement to the rear of the vehicle. Defendant testified that at impact plaintiff was "out from the engine at lease [sic] six, seven, eight feet, something like that." Plaintiff appealed from a judgment on jury verdict for defendant assigning error of the trial court in removing from jury consideration plaintiff's claim that defendant failed to yield the right of way. This court reversed stating as follows:

"We think that under this evidence and the decision of this court in *Manning v. Helbock et al,* 135 Or 262, 295 P 207, the question whether the plaintiff was in the crosswalk when he was struck by defendant's automobile was for the jury. The direct evidence establishes that he was in the crosswalk when he handed up the list to the fireman. After that he would have returned to his duties in the depot but for the accident. His most direct route was the same as that by which he came, the crosswalk. No reason appears for him to deviate from that route. Under the evidence most favorable to the plaintiff, he was struck

[285]

less than four seconds after delivering the list and when he was as little as six feet—two paces—from the point where he then stood. We think that an inference could reasonably be drawn from the whole of the evidence that he traveled these six feet in the crosswalk or at least as close thereto as to give him the protection of the right-of-way statute. *Lynch v. Clark et al,* 183 Or 431, 442, 194 P2d 416; *Manning v. Helbock, supra,* 135 Or at 267. * * *" *Myhre v. Peterson,* 233 Or 470 at 473, 474.

Plaintiff also relies upon *Lynch v. Clark et al,* 183 Or 431, 194 P2d 416 (1948) which is cited in the *Myhre* case. In that case the pedestrian had been killed by the impact. The defendant driver had not seen the pedestrian at all prior to impact and didn't even realize he had struck a human being. This particular collision happened one block south of the intersection involved in *Myhre.* It occurred at Front Street and Court Street in Salem, Front extending northerly-southerly and Court extending easterly-westerly. The investigating officer found blood stains at a point which he measured to be 9 feet 10 inches south of the north curbline of Court Street. If that was the point at which the pedestrian was struck it would mean that he would be almost 10 feet out of the crosswalk. The evidence indicated, however, that the vehicle had struck the pedestrian so hard as to damage the left front headlight, dent the hood and hurl the pedestrian over the left top of the car and to cast his body southerly to a point about 60 feet south of the north curbline of Court Street. This court stated that it was "impossible to believe that the blood and articles which were thrown from the body of the decedent by the force of the impact should have fallen at the exact spot where the first impact occurred." The court went on as follows:

"* * * It follows that we cannot even say that there is any substantial evidence that the decedent was struck when he was south of the north curb line of Court street [sic], and we find no evidence which tends to show that his own conduct proximately contributed to his death. * * *.

[286]

"The evidence makes it reasonable to assume that the decedent may have been crossing Front street, either to or from the sidewalk on the north side of Court street. In view of the violence of the impact which hurled his body from 50 to 60 feet, there is no reason to infer from the marks on the highway that he was outside of the unmarked crosswalk when struck. But, if the fact should be that he was a few feet south of the north curb line of Court street when stuck, we are unable to see, from that fact alone, that his presence there, rather than a few feet further north, would have *contributed to the cause* of his injury. It is true that if he was in the crosswalk when hit, he was entitled to claim the right of way over the vehicle approaching from the north, and if he was materially south of the crosswalk, the operator of the vehicle would have had the right of way, but one not having the right of way is not guilty of negligence merely because of that fact, if he exercises the care required of a person in that situation. * * *" (emphasis added) 183 Or at 441, 442.

Plaintiff also relies upon the case of *Manning v. Helbock et al,* 135 Or 262, 295 P 207 (1931). That case was cited in both *Lynch* and *Myhre.* In that case the pedestrian was also killed by the impact. The pedestrian was crossing the intersection from the southwest corner to the northwest corner. The driver was proceeding westerly. The trial court instructed the jury that whether decedent was in the crosswalk or out of the crosswalk no question of violation of the right-of-way rule was involved. Plaintiff assigned this as error upon appeal. This court set forth the statute which is similar in important parts to ORS 483.210. Immediately after the accident the decedent was found by witnesses lying on the pavement about one and one-half or two feet outside the regular pedestrian crossing. This court stated that in light of this evidence the jury would "unquestionably be entitled to draw the reasonable inference that, at the time decedent was struck, he was within the pedestrian crossing." 135 Or at 267. The *Manning* court then went on to say what is

relied upon by plaintiff and was quoted by this court in *Lynch.* (See 183 Or at 442) The *Manning* court said:

" * * * Indeed, there is very reputable authority to the effect that a pedestrian is entitled to the benefit of such right of way rule, notwithstanding he was not exactly within the pedestrian crossing, but a few feet outside the boundary line: Berry on Automobiles (6th Ed.) section 357; Blashfield's Encyclopedia of Automobile Law, vol. 1, p. 590, citing *Horney v. Giering,* 132 Wash. 555 (231 P. 958), and *Yanase v. Seattle Taxicab and Transfer Co.,* 91 Wash. 415 (157 P. 1076)." 135 Or at 267.

Taking these earlier Oregon cases in reverse order we shall discuss them briefly. In *Manning* the court actually found that there was sufficient evidence from which the jury could find decedent was within the pedestrian crossing. The court reversed for failure to instruct upon right-of-way. The statement set forth above and quoted in *Lynch* is dictum. In *Lynch* this court stated that there was no substantial evidence that the pedestrian was struck when he was out of the crosswalk. In *Myhre* this court found that there was sufficient evidence for the jury to find that the pedestrian was in the crosswalk when struck. This court did go on, upon the authority of *Lynch* and *Manning,* to say that under the evidence set forth in the quotation, *supra,* that the pedestrian was either in the crosswalk or "at least as close thereto as to give him the protection of the right-of-way statute."

We find plaintiff's reliance in the case at bar on *Manning, Lynch and Myhre* is misplaced. In each of those cases the court found that there was evidence from which the jury could conclude that the pedestrian was actually within the crosswalk. Under any version of the evidence in the case at bar, that is not so. Insofar as these previous cases cited by plaintiff are concerned, the statements concerning the pedestrian's rights, if he is close to the crosswalk, are dicta.

[288]

We believe that in a proper case these dicta may well need to be examined because the point of departure for analysis by the court is not correct. The statutes are clear. Plaintiff has the right-of-way only if within the crosswalk. Otherwise, the motorist has the right-of-way. No matter which party has the right-of-way, however, each is required by ORS 483.210(5) to exercise due care. It seems to us that the focus for analysis in cases where the pedestrian is outside of the crosswalk but close thereto should be upon the issue of causation. Compare the language which we emphasized, *supra,* in quoting from *Lynch;* namely,

> "But, if the fact should be that he was a few feet south of the north curb line of Court street [sic] when struck, we are unable to see, from that fact alone, that his presence there, rather than a few feet further north, would have *contributed to the cause* of his injury." (emphasis added)

We need not explore at this time whether those dicta in those cases should be expressly disavowed because, as we have pointed out, there is no evidence whatsoever in this case that plaintiff at the time of impact was either within the crosswalk "or even a few feet from" the crosswalk. Whatever the words "a few feet from" may mean, we hold they do not mean 15 to 20 feet from the crosswalk when coupled with the fact that plaintiff was traveling almost directly away from the crosswalk. It necessarily follows, therefore, that we reject plaintiff's contention that the court erred in failing to instruct that plaintiff, in this case, should have the benefit of the right-of-way statute if the jury were to find the plaintiff to be "even a few feet" from the crosswalk.

The instruction is also faulty in another respect which would justify the trial court in refusing to give it. Neither party argued this to this court, however, and therefore we mention it only in passing. A further vice of the requested instruction is the following language: "If you find that the plaintiff was walking

within.* * *" There is no evidence whatsoever in the record which entitles the plaintiff to an instruction which would allow the jury to apply the law of right-of-way to a situation where the plaintiff is actually within the crosswalk. All of the evidence in this case is to the contrary.

Plaintiff's other assignment of error is concerned with the failure of the court to give what plaintiff claims to be her requested instruction No. 9. The record indicates that she requested Uniform Jury Instruction No. 10.03 by number. In the set of uniform jury instructions which we have No. 10.03 reads as follows:

"In addition to common-law negligence there is also statutory negligence, which consists of the violation of a statute or ordinance[4] that, for the safety or protection of others, requires certain conduct or forbids certain conduct.

"Where I call your attention to any such statute or ordinance,[4] a violation of that statute or ordinance by a party constitutes negligence in and of itself. (Unless you find from all the evidence that such party has established that he was acting as a reasonably prudent person under the circumstances.) *"

The asterisk directs attention to the fact that the matter in parentheses is appropriate where the court rules that evidence produced is sufficient to create a question for the jury whether the party acted wisely despite violation of the statute.

■  In her brief to this court, in setting forth the text of the instruction which she contends she requested, plaintiff has omitted the portion of No. 10.03 set forth in parentheses. In her reply brief, plaintiff vehemently invokes the rule of *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), and rails against the trial court for

---

[4] No ordinance is identified in the record as being applicable. To dispose of this assignment of error, we could invoke the rule that a "requested instruction is always properly refused, unless it ought to have been given in the very terms in which it was proposed." *State v. Quarter,* 118 Or 637, 247 P 783 (1926).

having failed to apply that rule. We have difficulty in coming to grips with this matter because of the form of plaintiff's assignment of error. In her assignment of error she does not protest the failure of the court to include the matter in parentheses from instruction No. 10.03, although that is the language which is supported by *Barnum v. Williams, supra.* Moreover, in her reply brief plaintiff assails the court's instruction that,

> "The law presumes that all persons have obeyed the law and are free from negligence; accordingly, the mere fact that there was an impact or that plaintiff Carter was injured is not indication of negligence on the part of the defendant. In other words, what that means is that plaintiff has the burden of establishing negligence by a preponderance of the evidence."

Plaintiff in her reply brief submits that this instruction in the circumstances constitutes reversible error. Whether this is so or not we need not decide for plaintiff took no exception to that portion of the court's charge and did not assign it as error upon this appeal.

Returning to the case which plaintiff *has presented* to us we find that the court during its charge to the jury gave the first sentence of Uniform Jury Instruction No. 10.03 but omitted the second sentence. The court instructed in the following words:

> "Now, in addition to this general definition of negligence there is what is called 'statutory negligence' which consists of the violation of a statute regulating the driving of a motor vehicle or of a duty of a pedestrian on a highway."

Plaintiff contends that the failure to give the second sentence constitutes reversible error.[5] We disagree.

---

[5] Defendant urges that the court did instruct the jury in accordance with the second sentence of No. 10.03 because after the jury had been selected and sworn and before evidence was presented the court informed the jury concerning statutory negligence in the following words:

> "Now, there is also what is called statutory negligence which consists of the violation of a statute which bears on driving regulations and a violation of a statute is negligence."

First, we would note that the Uniform Jury Instructions do not have the force and effect of statute. There is no statutory requirement, that is to say, that such instructions be given in the form set forth in the book. We agree with plaintiff that the giving of the second sentence would make the instruction much clearer to the jury, but it does not follow that the failure to give the second sentence constitutes reversible error. The first sentence, which the court did give, does inform the jury that in addition to common-law negligence which the court had just defined for the jury there is a species of negligence called "statutory negligence" and that that term refers to a violation of a statute regulating the driving of a motor vehicle and the duty of a pedestrian on the highway. The court did give to the jury the wording of the applicable statutes quoted in the first part of this opinion. The jury had before it, therefore, the applicable statutes together with the court's charge that there is a form of negligence known as "statutory negligence" which consists of a violation of one of the pertinent statutes. Despite the fact, therefore, that the court's charge was not as clear as it would have been had the second sentence been given, nevertheless, the jury was adequately informed that a violation of one of the pertinent statutes would constitute negligence.

Affirmed.

---

This is of no avail to defendant upon this assignment of error. The time for charging the jury is after the evidence has been presented. Introductory remarks by the court to give the jury some background for receiving the evidence are not to be considered a portion of the charge of the court to the jury.