Argued and submitted December 4, 1989, reversed and remanded January 3, 1990

# DRAKE MOORE INVESTMENT COMPANY,
## *Appellant,*
### *v.*
# JANIK et al,
## *Respondents.*
### (A8705-03410; CA A49017)
784 P2d 453

Barbee B. Lyon, Portland, argued the cause for appellant. With him on the briefs was Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Don G. Carter, Portland, argued the cause for respondents. With him on the brief was McEwen, Gisvold, Rankin & Stewart, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals from a judgment entered on the verdict for defendants in this legal malpractice action, arising out of defendant Janik's[1] preparation of the contract whereby plaintiff sold an office building to Robert Meyer. At the time that it constructed the building, plaintiff obtained financing from Standard Insurance Company and executed a mortgage[2] that contained a prepayment penalty provision. The first contract between plaintiff and Meyer, which Janik did not prepare, was a lease-option. It provided for the prepayment penalty under the Standard mortgage to be passed through to Meyer to some extent and under certain circumstances. However, when Meyer decided to buy the building, the parties chose to enter into a new contract rather than to proceed under the lease-option agreement. Plaintiff then consulted Janik. The contract that he prepared allowed Meyer to prepay plaintiff without penalty and did not provide for Meyer to be responsible for any prepayment penalty that plaintiff would be required to pay Standard.

Meyer ultimately defaulted, a new purchaser for the building was found and it was necessary to remove the encumbrance of the Standard Insurance Company mortgage. Plaintiff contends that its responsibility for the prepayment penalty that resulted, without recourse against Meyer, was caused by Janik's negligent failure to recognize or consider whether, or to advise plaintiff that, a prepayment penalty or "pass through" provision should be included in the sale contract.[3]

Plaintiff's theory of the case was that, under the applicable standard of care, Janik had an affirmative duty to raise and advise plaintiff about the prepayment penalty problem, even though plaintiff had not apprised Janik that it wanted a penalty or pass through provision in the contract.

---

[1] The other defendants were Janik's partners or employers at the relevant times, and their involvement is derivative.

[2] The parties generally refer to the instrument as a mortgage, and we will use their term.

[3] Janik testified that he advised Moore, one of plaintiff's principals, about the prepayment penalty question and that Moore did not want a provision in the contract. Moore testified that the subject was not discussed.

There was expert testimony that supported that theory. Moreover, one expert testified that a reasonably prudent practitioner, representing a seller under these circumstances, would not only propose a pass through provision but would also make it clear to a client who was willing to agree not to have one that he would be acting against advice.[4]

The trial court instructed the jury, pursuant to defendants' request:

"In order for the Plaintiff to recover in this case, the Plaintiff must establish by a preponderance of the evidence the following: One, that the terms of the sale of the property included the agreement of the purchaser [Meyer] to be responsible for the payment of the prepayment penalty on the underlying mortgage to the Standard Insurance Company;

"Two, that the Defendant Janik was advised by the Plaintiffs of the purchaser['s] agreement to be responsible for the prepayment penalty.

"If you find that [Meyer] did not agree to pay the prepayment penalty, you must return the verdict for the Defendants.

"If you find that [Meyer] agreed to pay the prepayment penalty, then you further find that the Defendant Janik was not advised that [he] so agreed, your verdict must likewise be for the Defendants."

Plaintiff assigns error to that instruction and argues that it was the equivalent of a directed verdict, because there was no evidence that Meyer had agreed to be responsible for the penalty. Plaintiff explains:

"Why was there no evidence that Meyer had agreed to be responsible for the prepayment penalty? It is because he could not have agreed to something which had not been proposed to him. It would not have been proposed to him unless someone on plaintiff's side proposed it to him, since his own attorney's strategy was to lie low on the issue. Neither [of plaintiff's principals] proposed it, because they weren't aware of the problem, and relied on Janik to spot such problems. Janik, however, did not propose it to Meyer. Indeed, Janik proposed

---

[4] There was also expert evidence to the contrary, but that is not relevant to the issues on appeal. The parties dispute at some length whether, in our review, the evidence should be viewed favorably to plaintiff or to defendants. Under *Carter v. Mote*, 285 Or 275, 279, 590 P2d 1214 (1979), plaintiff is correct, to the extent that this assignment presents a question of whether there was *sufficient evidence* to require that plaintiff's theory of the case be submitted to the jury.

just the opposite. Janik in effect proposed that his own clients bear the burden of the prepayment penalty, even if that penalty were triggered by Meyer's default.

"Why didn't Janik propose that Meyer bear any penalty caused by his prepayment? Why didn't he draft the first draft of the contract accordingly? According to plaintiff's evidence, Janik either failed to spot the issue, or, having spotted it, failed to protect his clients' interest. In either event, he was negligent.

"* * * * *

"The instructions allowed for liability only if Janik failed to write down what his clients told him to write down. In effect, the instructions reduced Janik's duty to that of a scrivener or a notary public. We respectfully submit that a lawyer is more than that, particularly a lawyer who holds himself out as a specialist. The instructions are wrong because they are contrary to all the evidence about the scope of a lawyer's duty."

Defendants respond that the instruction correctly informed the jury about proof of causation: Even if Janik was negligent, they explain, his omission did not cause plaintiff's damage unless Meyer would have agreed to a provision by which he was responsible for the penalty, had Janik caused one to be proposed. Defendants acknowledge that the instruction addressed only whether Meyer *did* agree, and they say that it "may have been incomplete because it did not tell the jury that plaintiff could prevail if it found that Meyer *would have agreed* to pay the prepayment premium." (Emphasis defendants'.) Defendants argue, however, that plaintiff's exception did not alert the trial court to *that* problem with the instruction and

"[t]he trial court's instruction was correct as far as it went. Plaintiff must bear the responsibility for the court's failure to go further."

■  Assuming defendants' curious proposition that the instruction that they requested was not erroneous *simply because* it was incomplete, we do not agree with them that it was "correct as far as it went." Plaintiff argues that, rather than relating to causation, the instruction related to and misstated the "nature of [Janik's] duty." Whether or not that is strictly correct, the instruction defined *what* causal event had to be proved by reference to a particular view of Janik's duty

that was not the only view that the evidence supported. If his duty was to set events in motion that would lead to a provison being proposed to Meyer, the fact that Meyer *did not* assent to a prepayment penalty in the absence of a proposal is virtually irrelevant. What he *would have done* if Janik had performed his duty is the pertinent factor in determining whether Janik's alleged negligence caused Meyer's nonconsent and, in turn, plaintiff's injury. The instruction assumes that the standard of care required Janik to attempt to embody a prepayment penalty or pass through provision in the contract *only if* the parties agreed to one without any initiative or advice on his part. There was evidence to support the opposite understanding of what was required of him.

The instruction is also incorrect for the reason that it assumes that Meyer's willingness to assume the penalty constitutes the only possible causal link between Janik's conduct and plaintiff's harm. However, the alleged negligence conceivably could have caused the damage in other ways that were inferable from the evidence. For example, the existing lease-option agreement contained a provision by which Meyer assumed the penalty under the mortgage, at least under some circumstances. It can be inferred from the testimony of plaintiff's principal, Moore, that, if plaintiff had been properly advised, it would not have agreed to replace that agreement with a new one that did not contain such a provision.

Defendants argue that any error in the instruction was harmless and contend that plaintiff failed to prove that Meyer would have been able to pay the penalty, if he had assumed it. Assuming without deciding that that fact had to be proved, it was. Although Meyer's testimony was somewhat doubtful on the hypothetical subject, he did testify that he "probably could have borrowed the money" to pay the penalty. Moreover, plaintiff's remedies under the contract with Meyer included recourse to the property, the purchase price of which was $793,000. The trier of fact could infer that plaintiff could have recovered the $26,425.64 prepayment penalty from the security, had Meyer agreed to pay it and defaulted. We conclude that the instruction was erroneous and that the error was prejudicial.

■ Plaintiff also assigns error to the trial court's exclusion of evidence that the mortgage contained a "call provision" and that Janik did not include anything in the contract

to cover that contingency. Although that omission is unrelated to the prepayment penalty and did not result in damage, plaintiff argues that it showed a "continuing course of negligent conduct" in failing to tailor the "wraparound" contract to the underlying instrument. Although the evidence was relevant, we would not hold, on *this* record, that its exclusion would be an abuse of discretion or reversible error by itself.

Reversed and remanded.