Argued February 9, reversed and remanded March 1, 1973

JACKSON, *Appellant, v.* WYANT, *Respondent.*

506 P2d 693

*Bruce W. Williams,* Salem, argued the cause for appellant. With him on the brief were Williams, Skopil, Miller, Beck & Wyllie, Salem.

*Sam F. Speerstra,* Salem, argued the cause for respondent. With him on the brief were Rhoten, Rhoten & Speerstra, Salem.

Before McALLISTER, Presiding Justice, and DENECKE, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for personal injuries allegedly resulting from the collapse of a "pull down" ladder in a house rented by plaintiff from defendant. The jury returned a verdict for defendant. Plaintiff appeals from the resulting judgment.

Plaintiff's primary contention is that it was error to instruct the jury on the subject of contributory neg-

ligence and, in particular, to instruct the jury that plaintiff, as a tenant, had a duty to inspect the ladder before using it and that if he failed to do so he was contributorily negligent if there was a defect that could have been discovered by a reasonable inspection.[1]

Defendant, the owner and lessor of the house, had in January 1970, installed the "pull down" ladder in the ceiling of its garage to provide access to a storage space in its attic. He had some previous experience in building construction and had previously installed other "pull down" ladders.

In the ceiling of the garage the joists were "framed" around a rectangular opening of the proper size to fit a "frame" attached to the top of the folding ladder. That "frame," made of 1" x 4" or 1" x 5" boards, was then inserted in the opening and was attached to it by nails.

Defendant testified that for this purpose he used six nails—four sevenpenny galvanized nails ($2\frac{1}{4}$" long) and two eightpenny nails ($2\frac{1}{2}$" long). He placed one nail in the middle of each of the four "sides," nailing through the "frame" and into the joists. The other two nails were placed in two "corners."

Defendant admitted that written instructions for installation came with the ladder and that he did not read them at that time, but saw them later (after the

---

[1] That portion of the instruction on contributory negligence reads as follows:

"It was the duty of the plaintiff, in making use of the ladder, to keep a lookout for his own safety and in this instance it was his duty, before making use of the ladder, to make an inspection of the ladder and if there was a defect and it could have been discovered by a reasonably prudent person making a reasonable inspection, then the plaintiff would have been guilty of contributory negligence if he failed to make such an inspection and your verdict would be for the defendant."

accident) and that they required "something that is way above what it would take." He also admitted that after the accident he reinstalled the ladder and at that time used eight nails of unspecified size.

In November 1970, defendant rented the house to plaintiff. The accident occurred two months later, on January 5, 1971. Prior to that date plaintiff had used the ladder at least 10 times and testified that "It appeared to be solid when I used it the previous times. I had no problem with it at all." He also said that he never noticed anything wrong with the ladder and that he never looked "to see what held it in place."

On that day the plaintiff, who weighed 185 pounds, used the ladder to store a stove hood in the attic. He pulled down the ladder and climbed to its top step. He was just "going to lay it [the stove hood] on the floor of the attic" when the ladder fell. What happened was that the nails pulled out and the head of one of them "pulled off."

The stove hood was made of light metal and defendant does not contend that it was heavier than other objects which would normally be stored in the attic. As previously stated, the purpose of the ladder was to provide a means by which such objects could be stored in the attic.

Plaintiff's expert witnesses, including the City Building Inspector, testified that the nails used by defendant were not adequate; that apparently no "shimming" had been used and that in the absence of "shimming" nails are more likely to bend and break off or pull out.

Defendant and his expert witness testified, however, that the nails used were adequate and that the "frame" fit so tightly as not to require "shimming."

In support of his contention that the judgment

in favor of defendant should be affirmed, defendant argues that there was ample evidence from which the jury could have found that he was not negligent in the first instance and that there was also ample evidence from which the jury could have found that plaintiff was contributorily negligent and that the jury was properly instructed.

Although the primary issue on this appeal involves the duty of the tenant, rather than that of his landlord, it is nevertheless important to bear in mind that the duty of the landlord to the tenant is stated in 2 Restatement 243, Torts 2d § 358 (1), as follows:

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk or physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if (a) the lessee does not know or have reason to know of the condition or the risk involved, and (b) the lessor knows or has reason to know of the condition, and realizes or *should realize* the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk." (Emphasis added)

See also *Freitag v. Evenson et ux*, 232 Or 225, 228, 375 P2d 69 (1962), stating substantially the same rule.[2] Cf. *Jensen v. Meyers*, 250 Or 360, 441 P2d 604 (1968). In this case, however, we are not required to state or approve a rule that sets forth the extent and limits of the duty of the landlord in such a case.

---

[2] It will be noted that our decision in that case rejected the requirement the lessor must have actual knowledge of the risk, as previously required and as stated in original Restatement of Torts § 358 prior to revision of that rule as now stated in 2 Restatement 243, Torts 2d § 358.

■ ■ In any event, there was sufficient evidence in this case from which the jury could have found that defendant, as both the lessor and the person who installed this "pull down" ladder, knew not only the number, but the size of the nails which he used to attach the ladder in the ceiling of the garage, and that, as a result, defendant had reason to know that he had created a condition involving unreasonable risk of physical harm to a lessee who used that ladder and that plaintiff, as the lessee, did not know of the condition or realize the risk.

There was no evidence in this case that plaintiff, as the tenant, either knew or had reason to know of the condition or to realize the risk involved. He had nothing to do with the installation of the ladder. And while by making an inspection of the ladder he might have ascertained the number of nails used to attach it in the ceiling by counting the number of nailheads, assuming that they were exposed, he had no way of ascertaining how long the nails were and whether they were long enough to be safe without pulling the nails out and taking the ladder down.

■ It is true that contributory negligence may consist of voluntary exposure to an unreasonable risk. But in order to constitute contributory negligence of that sort the plaintiff must know of the physical condition created by defendant's negligence and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved and he must then intentionally and unreasonably expose himself to that known danger.[9]

---

[9] As stated in 2 Restatement 511, Torts 2d § 466(a), contributory negligence may consist of "an intentional and unreasonable exposure * * * to danger created by the defendant's negligence,

This court has never before decided this question in a case involving the contention (as in this case) that a tenant who has been injured as the result of a defect in a rented house would not be guilty of contributory negligence if he did not know of the defectively dangerous condition. We have held, to the converse, however, that if in such a case the tenant knows of the dangerous condition he has a duty to exercise a higher degree of care and that in such a case it may be a jury question whether the tenant was guilty of contributory negligence. *Pritchard v. Terrill,* 189 Or 662, 667, 222 P2d 652 (1950). See also Annot., 25 ALR2d 364 and 26 ALR2d 468.

In this case there was no evidence that at the time when plaintiff used the ladder he either knew of the "physical condition" (i.e., the manner in which the ladder was attached, including the size of the nails used for that purpose) or that he knew of such facts that, as a reasonable man, he should have realized the danger involved. Indeed, there was no evidence that on or at any time prior to the date of the accident the nails used to fasten the ladder "frame" in the ceiling

of which danger the plaintiff knows or has reason to know * * *." However, as stated in Comment c under § 466(a):

"In order that the plaintiff's conduct may be contributory negligence of the sort described in Clause (a), the plaintiff must know of the physical condition created by the defendant's negligence and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved. Furthermore, the plaintiff must intentionally expose himself to this danger. He must have the purpose to place himself within reach of it. It is not enough that his failure to exercise reasonable attention to his surroundings prevents him from observing the danger, * * *. Last of all, his intentional exposure of himself to the known danger must be unreasonable. In order that it may be unreasonable it is necessary that a reasonable man in his position would not expose himself to it. * * *"

were loose or in the process of pulling out or in danger of doing so.

■ As held by the Supreme Court of California in *DiMare v. Cresci*, 58 Cal 2d 292, 23 Cal Rptr 772, 373 P2d 860, 865 (1962), in a case involving similar facts:

"The court properly refused to instruct the jury on contributory negligence. Plaintiff, as a tenant, was entitled to use the stairs, and so far as appears she used them in a reasonable manner and was not aware of the defect that caused the collapse. She did not have a duty to inspect the common stairway for latent defects * * *."

To the same effect, see *Bost v. Provenza*, 47 So 2d 437, 440 (La App 1950), and *Dalton v. John Maguire Real Estate Co.*, 221 SW 443, 446 (Mo App 1920).

■ Although most of the cases in which this question has been presented have involved defective stairways used by the plaintiff in common with other tenants, so as to impose a higher duty of care on the owner, we believe that they are nevertheless in point on the issue whether a tenant who has no knowledge of a dangerous defect may be guilty of contributory negligence.

■ For these reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.④

---

④ Plaintiff's remaining assignment of error involves the failure of the trial court to give an instruction requested by plaintiff relating to the duty of defendant as the builder of the house. Although the requested instruction was not inappropriate, the trial court did not err in failing to give that instruction in view of other instructions given by it.