Argued and submitted November 27, 1990, affirmed March 6, reconsideration denied
April 17, petition for review denied May 7, 1991 (311 Or 349)

Joy Lynn CALLAHAN,
*Appellant,*

*v.*

Glen E. SELLERS,
*Respondent.*

(L88-2462; CA A62469)

806 P2d 1176

Dean Heiling, Salem, argued the cause for appellant. With him on the briefs was Gatti, Gatti, Maier & Associates, Salem.

Joel S. Devore, Eugene, argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richard & Fraser, P.C., Eugene.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

■  A jury found that plaintiff and defendant were each 50 percent responsible for a motorcycle accident that took place on the Cleveland Loop Road near Roseburg. Defendant was the operator; plaintiff was his passenger. Plaintiff appeals, claiming that the court erred when it denied her motion to strike[1] two of defendant's affirmative defenses on the ground that no evidence supported his allegations of her comparative negligence. We affirm.

Plaintiff's case went to the jury on the theory that defendant caused the accident by failing to maintain control of the motorcycle.[2] Defendant argued to the jury that plaintiff's negligence, not his own, caused the accident. He advanced alternative theories: First, defendant claimed that plaintiff caused the accident by carelessly falling off the motorcycle; second, he claimed that she did not maintain her balance, because she was intoxicated with alcohol.[3] Under either theory, defendant claimed that plaintiff's conduct caused him to lose control of the motorcycle.

Plaintiff testified that she met defendant at a motorcycle shop. He gave her a ride on his motorcycle. She had ridden as a passenger on motorcycles many times before. In the one-month period before the accident, she had ridden on motorcycles between 10 and 15 times. They went to a tavern and had "a couple of beers each." They then traveled the back roads and stopped at a nearby river "for a couple of hours." It began to get dark, so they decided to leave.

Defendant was taking plaintiff home when the accident happened. Plaintiff testified that she could no longer feel

---

[1] Plaintiff moved to strike affirmative defenses at the end of the evidence. We apply standards of review relevant to a motion for directed verdict. We give defendant every inference in his favor that may reasonably be drawn from the evidence. *Lemons v. Holland,* 205 Or 163, 167, 284 P2d 1041 (1955).

[2] After defendant rested, he moved to strike plaintiff's allegations that the motorcycle crashed because defendant traveled at an unreasonable speed or that he failed to keep a proper lookout. The court allowed the motion, because it concluded that there was no evidence to support those allegations of negligence. Plaintiff has not assigned error to that ruling.

[3] The court did not allow the jury to consider whether the motorcycle crashed and plaintiff's injuries were caused because plaintiff failed to wear a motorcycle helmet or because she leaned to the wrong side of the motorcycle, as defendant alleged in his answer. The court allowed plaintiff's motion to strike those allegations of negligence, because there was no evidence to support them. Defendant did not appeal that ruling.

the effect of the alcohol. Defendant seemed to be in control of his driving. He "went fast" a couple of times, but when plaintiff asked him to slow down, he did. At about 10 p.m., defendant was turning right into a curve on the road on which they were traveling and "didn't make the turn." The motorcycle "hit the gravel and the gravel caught the bike and pulled it into it." The motorcycle went into a ditch, hit a stump and fell. Plaintiff "went flying to the right." When she regained consciousness, she saw defendant moving the bike up to the road. He got on it and left.[4]

Plaintiff made her way home on foot. Roommates arrived later and took her to the hospital a little after midnight. She spent the night there and was released the next day. Dr. Harding wrote in an emergency room admission report that plaintiff said she was riding on the back of a motorcycle when it "crashed into some bushes after leaving the road." He wrote that plaintiff was speaking with her friends in a "consiratorial [sic] tone" and that she was "inappropriately cheerful." He smelled alcohol on her breath. A test indicated that she had a blood alcohol level of 0.164 percent. Dr. Kurihara wrote in a medical history report that plaintiff "was riding" a motorcycle and was "thrown off" in an accident. In a progress note, he wrote that plaintiff was "riding a motorcycle in Melrose" and "fell off." In plaintiff's discharge summary, he wrote:

> "Mrs. Callahan is a 26-year-old Caucasian female who was riding on the back of a motorcycle in Melrose at approximately 2200 hours on the 15th of April. *The patient fell from the bike* and sustained multiple contusions. The patient also had loss of consciousness. She was admitted for observation." (Emphasis supplied.)

■ The issue is whether the evidence permitted the jury to find that plaintiff helped cause the accident, either by falling or by failing to maintain her balance because she was intoxicated. Plaintiff argues that the evidence allowed the jury to engage in mere speculation; defendant argues that the jury made reasonable inferences from the evidence. *See Law v. Kemp,* 276 Or 581, 586, 556 P2d 109 (1976).

---

[4] Defendant did not testify and apparently was not present at the trial.

In *Skeeters v. Skeeters,* 237 Or 204, 389 P2d 313 (1964), the Supreme Court noted that

> "while the jury cannot be permitted to speculate, the jurors can be allowed to draw reasonable inferences from the evidence submitted by the litigants. Certainly, a function of the jury is to apply the ordinary experience of mankind to the disputed facts and arrive at the conclusion their reasoning dictates. It is difficult to define precisely the boundary line between conjecture and fact reasoning. But if the evidence makes a selection from the various possibilities and singles out in such a way as to display a causal relationship between the wrongful act of the defendants and the injury sustained by plaintiff, the conclusion is grounded in the proof and is not mere conjecture." 237 Or at 214.

The parties' briefs cite numerous cases in which courts have struggled to determine whether a jury's conclusion was on one side or the other of "the boundary line between conjecture and fact reasoning." Those cases are not particularly helpful because, ultimately, resolution of the issue requires that we examine the evidence produced against the theory advanced and apply legal reasoning and logic to the facts of each case.

All of the evidence regarding the cause of the accident came from plaintiff's testimony and from the hospital records that were made when she sought medical treatment after the accident. We first analyze defendant's claim that plaintiff carelessly fell and thereby caused the accident. Plaintiff testified that she did not fall. The two references to the word "fell" in the medical records are the only direct evidence from which the jury could have found that a fall was the cause, not the effect, of the accident.

Defendant had the burden of production and persuasion on his affirmative defenses. He met his production burden through the admission of the hospital records. Plaintiff testified that she did not fall, but the jury was not required to believe her. She did not call the doctors to testify and explain their notations. In closing argument, her counsel urged the jury not to infer from the records that plaintiff had caused the accident by carelessly falling. We readily acknowledge that the persuasive value of the fleeting references to the word "fell" in the hospital records is minimal. However, weighing the evidence is the job of the jury, not the court. *Shelton v. Lowell,* 196 Or 430, 435, 249 P2d 958 (1952). The jury could

reasonably infer from the evidence that plaintiff carelessly fell and thereby helped cause the accident.

With respect to intoxication and loss of balance,[5] although plaintiff testified that she did not feel the effect of the alcohol while defendant was driving her home, the blood alcohol test, given more than two hours after the accident, indicated an elevated blood alcohol level. With respect to balance, plaintiff testified that she was aware of the role a passenger's balance plays in the ability of the operator to control a motorcycle. Plaintiff testified that she knew "when to lean into a corner." She had been in other motorcycle accidents.

The jury was not obligated to believe plaintiff's testimony that she no longer felt the effect of the alcohol when defendant was taking her home. The blood alcohol test and inappropriate behavior at the hospital not only cast doubt on plaintiff's credibility, but permitted the jury to reach a permissible inference that she was under the influence of alcohol a little more than two hours before the test was administered.[6] It is common knowledge that the level of alcohol in the blood and alcohol's effect on a person's behavior dissipate over time. *State v. Conway,* 75 Or App 430, 435, 707 P2d 618, *rev den* 300 Or 451 (1985).

In *Lynn v. Stinnette,* 147 Or 105, 31 P2d 764 (1934), the Supreme Court, with respect to a claim of negligence for failure to keep a proper lookout, said:

"The mere fact that one was intoxicated or under the influence of liquor at the time of being injured does not of itself

---

[5] The intoxication allegation was directed only to the allegation that plaintiff lost her balance and *not* to the allegation that she had carelessly fallen. That distinction was maintained in the court's instructions to the jury. However, the special verdict form did not ask jurors to make findings as to each specification of negligence, but simply asked whether plaintiff was negligent "in one or more of the respects" claimed in defendant's answer. Consequently, we do not know the precise factual basis for the jury's conclusion.

If we were to find that the evidence supported one specification of negligence, but not the other, we would be required to order a new trial. *Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 788 P2d 428 (1990); *Pavlik v. Albertson's, Inc.,* 253 Or 370, 454 P2d 852 (1969). We affirm, because we determine that evidence supports the jury verdict as to each specification of negligence. *See Whinston v. Kaiser Foundation Hospital, supra,* 309 Or at 359.

[6] There was no evidence that plaintiff had consumed additional alcohol from the time when the accident happened at about 10 p.m. to the time when the test was administered a little more than two hours later.

constitute contributory negligence. It is a circumstance which may be considered by the jury in determining whether or not such intoxication contributed to an injury." 147 Or at 112.

In *McKibben v. McCain,* 86 Or App 372, 739 P2d 71, *rev den* 304 Or 149 (1987), the parties were "essentially guessing" as to the cause of an accident. 86 Or App at 375. We held that evidence of alcohol consumption, preceded by strenuous skiing and a lack of sleep, would have been enough to permit an inference that the driver failed to maintain a proper lookout and to control his vehicle. 86 Or App at 375.

■     Defendant produced no direct evidence to show that alcohol intoxication prevented plaintiff from maintaining her balance. However, it is not necessary to establish negligence by direct evidence. It may be inferred from the facts and circumstances surrounding an accident. *Carlson v. The May Dept. Stores,* 270 Or 289, 292, 527 P2d 252 (1974). Plaintiff testified that a passenger's sudden shift of balance can cause a motorcycle operator to lose control. Ordinary experience teaches that alcohol intoxication can prevent one from maintaining balance. The jury could reasonably infer that plaintiff did not maintain her balance as she rode down the hill around the curve and that she contributed to defendant's loss of control.

Affirmed.