Argued and submitted August 9, reversed and remanded October 12, 1994

Aaron BARNES,
*Respondent,*

*v.*

Debra L. WALSH
and Patrick Walsh,
husband and wife,
*Appellants,*

*and*

James M. KUBALEK
and Jane Kubalek,
*Defendants.*

(9205-03562; CA A80008)

883 P2d 234

Kenneth L. Ammann argued the cause for appellants. On the briefs were Bruce H. Tompkins, Ralph C. Spooner and Spooner & Much, P.C.

James S. Coon argued the cause for respondent. With him on the brief was Royce, Swanson, Thomas & Coon.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants[1] appeal the judgment entered after a jury verdict awarded tort damages to plaintiff. They contend that the trial court erred when it struck their allegations about plaintiff's negligence and when it refused to instruct the jury on that subject. ORCP 60. We reverse.

In June, 1991, plaintiff and a friend were visiting plaintiff's relative, who lived on the second floor of an apartment complex owned by defendants. The common area of the outside balcony of the second floor was protected by a guardrail. James Kubalek, the previous owner, had recently reinstalled the guardrail, just before selling the complex to defendant Debra Walsh. Plaintiff and his friend fell from the area of the guardrail, and plaintiff was injured.

As a result, he brought a claim for personal injury against the Kubaleks, alleging their negligent reinstallation of the guardrail, and against defendants for failing to discover the guardrail's condition and for failing to secure it properly. In their answer to plaintiff's second amended complaint, defendants made four allegations of negligence against plaintiff as affirmative defenses.[2] After the evidence was presented, and before the jury's deliberation, the trial court granted plaintiff's motion to strike the allegations about plaintiff's negligence on the ground that there was no evidence to support them.

In reviewing the trial court's granting of the motion to strike the allegations of negligence, "[w]e apply standards

---

[1] In this opinion, when we refer to defendants, we mean only the Walshes.

[2] Defendants alleged:

"At the time of the subject incident the plaintiff himself was negligent in one or more of the following particulars:

"a. Failing to keep and maintain a proper lookout for his own safety;

"b. Failing to keep and maintain proper control over the movement of his own body;

"c. Moving about on the balcony of the apartments after voluntarily becoming intoxicated to the extent that such intoxication affected the plaintiff's ability to keep proper balance.

"d. If the railing at the property on S.E. 30th was in a potentially dangerous condition, as plaintiff has alleged, then the plaintiff was negligent in leaning on or against the railing for an extended period of time after the plaintiff knew or should have known that the railing was in such condition."

of review relevant to a motion for directed verdict. We give defendant[s] every inference in [their] favor that may reasonably be drawn from the evidence." *Callahan v. Sellers*, 106 Or App 298, 300 n 1, 806 P2d 1176 (1991). In *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977), the Supreme Court said:

> "[A] nonsuit or directed verdict should be entered only in exceptional cases where, from the facts, reasonable men could draw but one inference * * *."

There is conflicting testimony in the record as to whether plaintiff and his friend were merely resting their hands on the railing or applying some lateral force against it before they fell. The evidence showed that the guardrail lacked the necessary screws to keep it properly secured. There was testimony that the missing screws were noticeable, and expert testimony suggested that a small amount of pressure on the rail would cause it to sway. The record also showed that plaintiff was intoxicated at the time of the fall. Defendant's expert placed plaintiff's blood alcohol level as high as .36 percent at that time. Also, defendant presented evidence on the effects that plaintiff's intoxication would have on his ability to control his movements, his coordination,[3] the likelihood that plaintiff lost consciousness[4] and his ability to perceive a hazardous condition.

---

[3] Defendants' medical witness testified:

"Q With regard to Mr. Barnes assuming these levels at the time that he fell, would you say it is medically probable that his balance was effected [*sic*]?

"A Unquestionably. His balance was seriously impaired at these levels, very seriously impaired.

"Q Coordination?

"A Same answer. His ability to coordinate as he normally would is impaired.

"Q How about the ability to catch oneself if you lose balance, was that?

"A Well, that involves both recognizing what's happening and reacting to what's happening. And in this particular situation, both of those abilities are handicapped."

[4] Defendants' medical witness testified:

"Q Assuming that [plaintiff] at the time of this fall incident was basically standing on both feet with his weight balanced on his feet, and was — his arm was down on the railing, the railing was 37 inches high * * *.

"Do you believe that his ability to hold himself upright, I'm talking about his own abilities now, would be impaired just to stand still at these things?

"A I believe they would be impaired. I think a person, any person at these levels is at best swaying and at worst close to a falling down individual.

■ Plaintiff argues that the only inference that can be drawn from the evidence is that he was not negligent and that to submit defendants' allegations to the jury would have required it to speculate on whether he was negligent. We disagree, because the jury could reasonably infer from the evidence that plaintiff's negligence contributed to the fall. *See Callahan v. Sellers, supra,* 106 Or App at 302.

As to the first allegation, another tenant testified that he had noticed the missing screws in the guardrail before the accident happened and, accordingly, he had avoided the guardrail. This evidence, coupled with evidence of plaintiff's intoxication level, could lead the jury to infer that the dangerous condition of the guardrail was obvious and that plaintiff was negligent in not exercising a proper lookout for his own safety. As to the second and third allegations, both of which allege that plaintiff's intoxication impaired his balance and coordination and caused him to fall, there was sufficient evidence to submit them to the jury. From the evidence, the jury could have found that, but for his intoxication, plaintiff would have controlled his balance under the circumstances or that he lost consciousness and fell over the railing. The latter argument was further supported by evidence that the railing landed on top of him when he came to rest on the ground. Regarding the fourth allegation, defendants' engineer witness testified that the guardrail was unstable and that its condition would have been apparent when a small amount of pressure was applied to it.[5] There was other evidence from

---

"Q What about at these kinds of levels passing out, becoming unconscious, is that likely?

"A It is not only likely, [counsel], but in controlled experiences [*sic*] that we've been involved with on many occasions, people who are not experienced drinkers will commonly go to sleep, pass out, lay down and snooze at levels around .02, .25. Most everybody at .25, if they are not sick, they are generally pretty close to being out."

[5] Defendants' engineer testified:

"Q Assuming that this rail had been put up after the deck had been repaired on May the 4th of 1991, put up for the purpose of this question with a few — if any of the bolts in the bases of, let's just say, two, three, four, five, six up there, but it had stood like that from May 4, 1991 until June 1 of 1991, if there hadn't been some lateral force placed on that railing, would the railing have just fallen down?

"A No, it shouldn't have. I mean, it would have had some strength to hold it up, because of the few bolts that were inserted.

which the jury could find that plaintiff had rested his hand on the railing for as long as three minutes before the accident. From this evidence, the jury could reasonably infer that when plaintiff touched the guardrail, it shook, and that but for his intoxication, he would have recognized its condition and would have avoided it.[6]

■■    Plaintiff counters that his state of intoxication is not sufficient to prove negligence. *See Lynch v. Clark et al*, 183 Or 431, 443, 194 P2d 416 (1948). As we said, the evidence about plaintiff's negligence involves more than just intoxication, because his intoxication was translated into conduct on a second story of a building next to a drop off. When intoxication is coupled with negligent conduct, or the failure to exercise the standard of care that ordinarily, a prudent person would have exercised under the same circumstances, then intoxication is a circumstance that may be considered by the jury. *Lynn v. Stinnette*, 147 Or 105, 112, 31 P2d 764 (1934).

■    Plaintiff also argues that he could only have been comparatively negligent if he had knowledge of the guardrail's condition, and that there is no evidence of that fact. However, there is evidence from which the jury could infer that he should have realized the danger involved and acted

---

"Q  With regard—I'm interested to know how much force it would have taken literally to determine that this rail was loose.

"A  Oh, just a very few pounds would be required, because if a person were to bend just one of these vertical straps that came down, that would require some 12 or 13 pounds to permanently bend one of those. So it would require less to rock the railing."

[6] Defendants specifically asked their medical witness about the effects of plaintiff's intoxication if he had encountered a loose guardrail:

"Q  One of the issues in the case is whether or not the railing where Mr. Barnes was may have been loose. Okay. At these kinds of levels, is a person's ability to perceive danger like that, like a loose railing, is that impaired?

"A  Yes, of course, [counsel]. The third category of impairment with alcohol is our ability to perceive, to recognize and to act and react, the ability to view their surroundings, to view whether they will be driving an automobile at a high speed or whether they put themselves in a hazardous situation.

"They simply, because of the deterioration of normal judgment, because of their incorrect assessment of their own performance, boy, I can do it, the blunting of the normal sense of care and caution is a characteristic and serious problem that people who are intoxicated with less alcohol than we're talking about today clearly have."

carefully when he was around the railing. That evidence creates an issue for the jury. *See Jackson v. Wyant*, 265 Or 19, 25, 506 P2d 693 (1973).

■     Finally, plaintiff argues that there is no evidence that the railing would have shaken when he touched it. He asserts that the engineer's conclusion about the stability of the railing was speculative, because there was disagreement among the witnesses regarding how many screws actually secured the guardrail. Therefore, he reasons that the expert based his conclusion on a hypothetical question with a faulty predicate. However, the witness's opinion was admitted without objection, and accordingly, the jury was entitled to consider it. In conclusion, we hold that the question of plaintiff's negligence should have been submitted to the jury.

Reversed and remanded.